UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES, ) ) Defendant. ) ) | Court No. 11-00335 |

## COMPLAINT

Plaintiff Ad Hoc Shrimp Trade Action Committee ("Plaintiff"), by and through its undersigned attorneys, makes the following allegations.

## DETERMINATION CONTESTED

1. This is an appeal from the final determination issued by the U.S. Department of Commerce, International Trade Administration ("Commerce") of the fifth administrative review of the antidumping duty order covering certain frozen warmwater shrimp from the People's Republic of China ("PRC"). The final determination covers entries of frozen warmwater shrimp from the PRC from February 1, 2009 through January 31, 2010.

2. Commerce issued its final results on August 15, 2011, and notice thereof was published in the Federal Register on August 19, 2011. See Certain Frozen Warmwater Shrimp from the People's Republic of China, 76 Fed. Reg. 51,940 (Dep't Commerce Aug. 19, 2011) (final results and partial rescission of antidumping duty administrative review) ("Final Results"). The challenged determinations, findings, and conclusions are set out primarily in the accompanying "Issues and Decision Memorandum" for the Final Results. See U.S. Department of Commerce

Issues and Decision Memorandum from C. Marsh to R. Lorentzen, Case No. A-570-893 (Aug. 12, 2011), available at: http://ia.ita.doc.gov/frn/summary/PRC/2011-21259-1.pdf ("ID Memo")

## JURISDICTION

3.  This action is commenced under Sections 516A(a)(2)(B)(iii) and 516A(d) of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. §§ 1516a(a)(2)(B)(iii), 1516a(d) (2006)), to contest the Final Results issued by Commerce in the fifth administrative review of certain frozen warmwater shrimp from the PRC.

4.  As to Count One of this Complaint, this action also arises (in whole or in part) under the Administrative Procedure Act, 5. U.S.C. § 702 (2006).

5.  This Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a, 28 U.S.C. § 1581(c), and 28 U.S.C. § 1581(i) (2006).

## TIMELINESS OF THE ACTION

6.  Commerce published the Final Results of the fifth administrative review of certain frozen warmwater shrimp from the PRC in the Federal Register on August 19, 2011. See Final Results, 76 Fed. Reg. at 51,940.

7.  This action was commenced by the filing of a Summons and Complaint on September 2, 2011, within 30 days after the publication of the Final Results. Accordingly, this action is timely commenced pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 28 U.S.C. § 2636(c) (2006).

8.  Civil actions brought pursuant to 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i) (2006). Plaintiff's cause of action accrued no earlier than August 19, 2011, when Commerce published the Final Results in the Federal Register and stated that it would issue assessment instructions to U.S. Customs and

Border Protection ("CBP") "15 days after the date of publication." <u>Final Results</u>, 76 Fed. Reg. at 51,943.  Therefore, Count One of this action (in whole or in part) is also timely filed.

## STANDING

9.     Plaintiff is an association, a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States.  Consequently, Plaintiff is an "interested party" as defined by 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(F) (2006).  Additionally, Plaintiff was a party to – and actively participated in – the administrative proceeding which resulted in the contested determination that is the subject of this appeal.  <u>See</u> ID Memo at 1 n.1.  Accordingly, Plaintiff has standing pursuant to 19 U.S.C. § 1516a(d) (2006) as a party to the proceeding in connection with which this Complaint arises.

10.    In addition, as to Count 1 (in whole or in part), having suffered legal wrong and having been adversely affected by agency action, Plaintiff has standing to bring this Complaint pursuant to 28 U.S.C. § 2631(i), which provides:

> Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5.

11.    Plaintiff is entitled to commence this action pursuant to 28 U.S.C. § 2631(c) and 28 U.S.C. § 2631(i) (2006).

## STATEMENT OF CLAIMS

### COUNT ONE

12.    Plaintiff incorporates the allegations contained in paragraphs 1 through 11 as fully set forth herein.

13.    Commerce stated in the <u>Final Results</u> that it "intends to issue assessment instructions to CBP 15 days after the date of publication of these final results of review." <u>Final Results</u>, 76 Fed.

Reg. at 51,943.  This statement reflects an announcement made by Commerce on November 10, 2010 that its agency practice is to issue liquidation instructions to CBP "15 days after the date of publication of the final results of an administrative review conducted under section 751 of the {Act}."  U.S. Department of Commerce, Import Administration, Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Administrative Reviews (Nov. 10, 2002), available at:  http://ia.ita.doc.gov/download/liquidation-announcement.html.

14. Commerce's practice of issuing liquidation instructions to CBP 15 days after the date of publication of a final administrative review determination is unlawful.  It conflicts with the statute that unambiguously allows interested parties to commence an action in this Court by filing a summons within 30 days after the date of publication in the Federal Register of notice of a final administrative review determination, and by filing a complaint within 30 days thereafter.  See 19 U.S.C. § 1516a(a)(2)(A) (2006).  This statute provides interested parties with 60 days from the date of publication to file a complaint before this Court challenging a final administrative review determination.  Commerce abrogated Plaintiff's right to judicial review by impermissibly truncating the timeframe provided by statute.

15. To prevent premature liquidation of entries covered by the Final Results and protect its rights, Plaintiff is required to file its Summons, Complaint, and Motion for Preliminary Injunction within the 15-day period, thereby imposing "unnecessary costs and burdens" on Plaintiff.  SKF USA Inc. v. United States, Slip Op. 11-94, C.I.T. Case No. 10-00284 (Aug. 2, 2011) at 6 (quotation marks omitted).

16. This Court has held that Commerce's 15-day liquidation practice is contrary to law.  See SKF USA Inc. v. United States, 675 F. Supp. 2d 1264, 1285 (C.I.T. 2009).  Nevertheless,

Commerce has applied this policy to the entries covered by the fifth administrative review of certain frozen warmwater shrimp from the PRC.  See Final Results, 76 Fed. Reg. at 51,943.

17. Commerce's decision to issue liquidation instructions 15 days after publication of the Final Results is arbitrary, capricious, unreasonable, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.

## COUNT TWO

18. Plaintiff incorporates the allegations contained in paragraphs 1 through 17 as fully set forth herein.

19. Commerce selected mandatory respondents pursuant to Section 77A(c)(2)(B) of the Act, which permits the agency to limit review to "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." 19 U.S.C. § 1677f-1(c)(2)(B) (2006); see ID Memo at 3.

20. Commerce relied on "Type 03" import data obtained from CBP as the basis for selecting mandatory respondents in this administrative review.  See ID Memo at 3-5.

21. Record evidence demonstrated that Type 03 CBP data were an unreliable proxy for determining which exporters and producers accounted for the largest volume of the subject merchandise from the exporting country.  See ID Memo at 3-5; Ad Hoc Shrimp Trade Action Comm. v. United States, Slip Op. 11-106, C.I.T. Case No. 10-00275 (Aug. 24, 2011) at 8-12.

22. Commerce's reliance on Type 03 CBP data to select mandatory respondents is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT THREE

23. Plaintiff incorporates the allegations contained in paragraphs 1 through 22 as fully set forth herein.

24. Commerce included data relating to imports of North Korea for the determination of surrogate values in the administrative review. See ID Memo at 27-28.

25. Record evidence demonstrated that the North Korean import data was distortive. Compare ID Memo at 27 with Ad Hoc Shrimp, Slip Op. 11-106, at 18 n.33.

26. Commerce's refusal to exclude North Korean import data, while simultaneously excluding import data from other non-market economies, is unsupported by substantial evidence and otherwise not in accordance with law.

### COUNT FOUR

27. Plaintiff incorporates the allegations contained in paragraphs 1 through 26 as fully set forth herein.

28. Commerce found that both India and Thailand were "equally economically comparable" to the PRC for purposes of surrogate value calculations. ID Memo at 7. Commerce's finding was based entirely on a comparison of the per capita gross national income of India, Thailand, and the PRC. See id. at 7 n.22 (citing U.S. Department of Commerce Internal Memorandum from C. Showers to C. Bertrand, Case No. A-570-893 (July 19, 2010) ("Surrogate Country Memo")).

29. Record evidence established that Thailand's per capita gross national income was much more similar to that of the PRC than is India's. See Surrogate Country Memo at 2. Further, the quality of the data on the record that could be used to value factors of production ("FOPs") and calculate surrogate financial record based on Thailand were at least equal, if not superior to, the quality of the data based on India.

30. Nevertheless, Commerce used "India as the primary surrogate country for the valuation of FOPs and surrogate financial ratios" in the Final Results. ID Memo at 10.

31.     Commerce's use of India rather than Thailand as the primary surrogate country for the valuation of FOPs and surrogate financial ratios in the Final Results is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT FIVE

32.     Plaintiff incorporates the allegations contained in paragraphs 1 through 31 as fully set forth herein.

33.     In the Final Results, Commerce departed from its long-established practice of valuing labor using "a multi-country averaging method" in favor of using "labor data from the primary surrogate country" previously selected for the purpose of valuing FOPs and surrogate financial ratios.  ID Memo at 24.

34.     Commerce based its previous policy on "the generally positive correlation between labor rates and gross national income."  Dorbest Ltd. v. United States, 604 F.3d 1363, 1371 (Fed. Cir. 2010).  Record evidence established that Thailand's per capita gross national income was much more similar to that of the PRC than is India's.  See Surrogate Country Memo at 2.

35.     Nonetheless, Commerce refused to reconsider its prior selection of India as the primary surrogate country, either for purposes of the labor FOP or for all FOPs and surrogate financial values, when it modified its labor valuation methodology in the Final Results.  See ID Memo at 23-25.

36.     Commerce further failed to adequately explain the basis for its departure from a multi-country averaging method for valuing labor, when that methodology was expressly upheld by this Court.  See Dorbest Ltd. v. United States, 755 F. Supp. 2d 1291, 1303-04 (C.I.T. 2011); Dorbest Ltd. v. United States, Slip Op. 2011-95, 2011 Ct. Intl. Trade LEXIS 94 (Aug. 3, 2011)

<u>Shandong Rongxin Imp. & Exp. Co. v. United States</u>, Slip Op. 2011-45, 2011 Ct. Intl. Trade LEXIS 44, *18-19 (Apr. 21, 2011)

37.   Commerce's use of labor data from India rather than data from Thailand or from a multi-country averaging method is unsupported by substantial evidence and otherwise not in accordance with law.

### REQUEST FOR RELIEF

38.   Wherefore, Plaintiff respectfully requests that this Court:

  a. hold and declare that the aspects of Commerce's <u>Final Results</u> described herein are unsupported by substantial evidence on the record or otherwise not in accordance with law;

  b. hold and declare that Commerce's practice of issuing liquidation instructions to CBP 15 days after the date of publication of a final administrative review determination is unlawful;

  c. remand this case to Commerce for disposition consistent with the decision of this Court; and

  d. provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

  /s/ David A. Yocis
Andrew W. Kentz
David A. Yocis
Nathaniel Maandig Rickard
PICARD KENTZ & ROWE **LLP**
1750 K St., N.W.
Suite 1200
Washington, DC 20006
(202) 331-5042
*Counsel to Plaintiff Ad Hoc Shrimp Trade Action Committee*

Dated:  September 1, 2011