### UNITED STATES COURT OF INTERNATIONAL TRADE
#### New York, New York

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) |
| | ) |
| Plaintiff, | )     Court No. 11-00335 |
| | ) |
| v. | )     Hon. Donald C. Pogue, |
| | )     Chief Judge |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| HILLTOP INTERNATIONAL and OCEAN DUKE CORP., | ) |
| | ) |
| Defendant-Intervenors. | ) |

## <u>ORDER</u>

Upon consideration of <u>Ad Hoc Shrimp Trade Action Committee v. United States</u>, 882 F. Supp. 2d 1366 (CIT 2012), <u>Ad Hoc Shrimp Trade Action Committee v. United States</u>, 882 F. Supp. 2d 1377 (CIT 2013), the Final Results of Remand Redetermination Pursuant to Court Remand filed by the U.S. Department of Commerce on April 1, 2013, Plaintiff Ad Hoc Shrimp Trade Action Committee's Comments on Final Results of Remand Redetermination Pursuant to Court Remand, Plaintiff Ad Hoc Shrimp Trade Action Committee's Reply to Defendant-Intervenors' Comments on Final Results of Remand Redetermination Pursuant to Court Remand, and all other proceedings and papers herein, it is hereby

ORDERED that the Final Results of Remand Redetermination Pursuant to Court Remand filed by the U.S. Department of Commerce on April 1, 2013, are AFFIRMED.

SO ORDERED

_____
The Honorable Chief Judge Donald C. Pogue
United States Court of International Trade

Dated: _____, 2013
       New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**New York, New York**

| | | |
|---|---|---|
| _____ | ) | |
| AD HOC SHRIMP TRADE ACTION | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 11-00335 |
| | ) | |
| v. | ) | Hon. Donald C. Pogue, |
| | ) | Chief Judge |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HILLTOP INTERNATIONAL and | ) | |
| OCEAN DUKE CORP., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

## PLAINTIFF AD HOC SHRIMP TRADE ACTION COMMITTEE'S REPLY TO DEFENDANT-INTERVENORS' COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Andrew W. Kentz
Jordan Charles Kahn
Nathaniel Maandig Rickard
Nathan W. Cunningham

**PICARD KENTZ & ROWE LLP**
1750 K St., NW
Suite 1200
Washington, DC 20006
(202) 331-5033

June 24, 2013

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES .......................................................................... ii

I.      INTRODUCTION.................................................................................2

II.     BY THWARTING COMMERCE'S LEGITIMATE INQUIRIES, HILLTOP
        IS PRECLUDED FROM CHALLENGING THE AGENCY FINDINGS.......2

III.    COMMERCE CORRECTLY ASSESSED THE RELEVANCE OF THE
        RECORD ..............................................................................................9

        A.      Failing to Disclose Ocean King Constituted Material
                Misrepresentation .......................................................................9

        B.      Record Evidence Establishes Likely AD Order Circumvention .........12

        C.      Hilltop's Attacks on the Commerce Findings Should Not Be
                Entertained .................................................................................14

        D.      Hilltop's Attacks on the Commerce Findings Are Meritless ...............17

IV.     COMMERCE PROPERLY APPLIED TOTAL AFA TO HILLTOP ...........22

        A.      All AFA Prerequisites Are Satisfied.......................................22

        B.      Hilltop's Arguments Against the Application of Total AFA Are
                Meritless.......................................................................................24

V.      HILLTOP WAS NOT EXEMPT FROM HAVING TO REBUT THE
        PRESUMPTION OF STATE CONTROL .........................................27

        A.      Commerce Initially Found that Hilltop Rebutted the Presumption ...27

        B.      Commerce On Remand Properly Reversed Hilltop's Separate Rate
                Eligibility.....................................................................................30

VI.     COMMERCE PROPERLY ASSIGNED HILLTOP THE 112.81% AD
        MARGIN ..............................................................................................34

        A.      The 112.81% PRC-Wide Rate Need Not Be Corroborated as to
                Hilltop............................................................................................34

        B.      The 112.81% PRC-Wide Rate Was Properly Corroborated................38

VII.    CONCLUSION ...................................................................................41

## TABLE OF AUTHORITIES

### CASES

Ad Hoc Shrimp Trade Action Comm. v. United States, 828 F. Supp. 2d 1345 (CIT 2012)……...6

Ad Hoc Shrimp Trade Action Comm. v. United States, 882 F. Supp. 2d 1366 (CIT 2012)…...1, 2

Ad Hoc Shrimp Trade Action Comm. v. United States, 882 F. Supp. 2d 1377 (CIT 2013)….. 1, 2

Allied Pac. Food (Dalian) Co. v. United States, 32 CIT 1328 (2008)……………………….40, 41

AMS Assocs., Inc. v. United States, 2013 U.S. App. LEXIS 12853 (June 24, 2013)……....33, 34

Ansaldo Componenti, S.p.A. v. United States, 10 CIT 28, 628 F. Supp. 198 (1986)………4, 5, 9

Consol. Bearings Co. v. United States, 348 F.3d 997 (Fed. Cir. 2003)……………………...8

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938)……………………………………………12, 21

D & L Supply Co. v. United States, 113 F.3d 1220 (Fed. Cir. 1997)……………………………40

Essar Steel Ltd. v. United States, 721 F. Supp. 2d 1285 (CIT 2010),
aff'd in relevant part, rev'd in part, 678 F.3d 1268 (Fed. Cir. 2012)……………………...…5

F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027
(Fed. Cir. 2000)……………………………………………………………………27, 41

Foshan Shunde Yongjian Housewares & Hardware Co. v. United States,
2011 Ct. Intl. Trade LEXIS 123 (Oct. 12, 2011)………………………………………...25

Gallant Ocean (Thail.) v. United States, 602 F.3d 1319 (Fed. Cir. 2010)……………………36

Gerber Food (Yunnan) Co. v. United States, 31 CIT 921, 387 F. Supp. 2d 1270 (2005)….........32

Globe Metallurgical Inc. v. United States, 722 F. Supp. 2d 1372 (CIT 2010)………………6, 7, 8

Home Prods. Int'l v. United States, 633 F.3d 1369 (Fed. Cir. 2011)……………………………17

Hontex Enters., Inc. v. United States, 27 CIT 272, 248 F. Supp. 2d 1323 (2003)………………..6

Hubbell Power Sys., Inc. v. United States, 884 F. Supp. 2d 1283 (CIT 2012)……………………8

Jiangsu Changbao Steel Tube Co. v. United States, 884 F. Supp. 2d 1295 (CIT 2012)…....passim

KYD, Inc. v. United States, 607 F.3d 760 (Fed. Cir. 2010)………………………....27, 39, 40, 41

Lifestyle Enter., Inc. v. United States, 768 F. Supp. 2d 1286 (CIT 2011)………………...…36, 37

Lifestyle Enter., Inc. v. United States, 896 F. Supp. 2d 1297 (CIT 2013)……………………..…37

Maclean-Fogg Co. v. United States, 836 F. Supp. 2d 1367 (CIT 2012)……………..15, 19, 40, 41

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927 (Fed. Cir. 1984)………………12, 21

Max Fortune Indus. Co. v. United States, 2013 Ct. Intl. Trade LEXIS 57 (Apr. 15, 2013)……...8

Mitsubishi Elec. Corp. v. United States, 12 CIT 1025, 700 F. Supp. 538 (1988),
aff'd, 898 F.2d 1577 (Fed. Cir. 1990)……………………………………………………………..6

Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247 (Fed. Cir. 2009)………………23

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003)…………………………..23

Pakfood Pub. Co. v. United States, 724 F. Supp. 2d 1327 (CIT 2010),
aff'd, 453 Fed. Appx. 986 (Fed. Cir. 2011)……………………………………………………...20

PAM S.p.A. v. United States, 582 F.3d 1336 (Fed. Cir. 2009)……………………………...…27, 41

Peer Bearing Co. - Changshan v. United States, 32 CIT 1307, 587 F. Supp. 2d 1319
(2008)....................…………………………………………………………………………35, 36

QVD Food Co. v. United States, 658 F.3d 1318 (Fed. Cir. 2011)…………………...15, 19, 40, 41

Shandong Mach. Imp. & Exp. Co. v. United States, 2009 Ct. Intl. Trade LEXIS 76
(CIT June 24, 2009)… …………………………………………………………………………38, 39

Shanghai Taoen Int'l Trading Co. v. United States, 29 CIT 189 (2005)……………………..…25

Shantou Red Garden Foodstuff Co. v. United States, 880 F. Supp. 2d 1332 (CIT 2012)…...40, 41

Ta Chen Stainless Steel Pipe Co. v. United States, 31 CIT 794 (2007)………………………....26

Ta Chen Stainless Steel Pipe, Ltd. v. United States, 23 CIT 804 (1999)………………………..14

Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352 (Fed. Cir. 2008)…………….......7, 8

Transcom, Inc. v. United States, 294 F.3d 1371 (Fed. Cir. 2002)………………………………35

Tung Mung Dev. Co. v. United States, 26 CIT 969, 219 F. Supp. 1333 (2002),
aff'd, 354 F.3d 1371 (Fed. Cir. 2004)……………………………………………………………..6

US Magnesium LLC v. United States, 895 F. Supp. 2d 1319 (CIT 2013)………………………17

Watanabe Gr. v. United States, 2010 Ct. Intl. Trade LEXIS 144 (Dec. 22, 2010)…………..…passim

Zenith Elecs. Corp. v. United States, 988 F.2d 1573 (Fed. Cir. 1993)…………………………..15

Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333
(Fed. Cir. 2011)……………………………………………………………………..……25

## STATUTES

19 U.S.C. § 1516a……………………………………………………………………..12

19 U.S.C. § 1592…………………………………………………………………………..8

19 U.S.C. § 1675…………………………………………………………………………..8

19 U.S.C.§ 1677…………………………………………………………………………18

19 U.S.C. § 1677e…………………………………………………………...…passim

19 U.S.C. § 1677j………………………………………………….……....6, 22, 26

19 U.S.C. § 1677m…………………………………………………………………32

## REGULATIONS

19 C.F.R. § 351.106………………………………………………………….……..…12

19 C.F.R. § 351.225…………………………………………………………….…..…8

19 C.F.R. § 351.308………………………………………………………………...37

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

Certain Activated Carbon from the People's Republic of China: Preliminary Results of
the Third Antidumping Duty Administrative Review, and Preliminary Rescission in Part,
76 Fed. Reg. 23,978 (Apr. 29, 2011)…………………………………………………...6, 7

Certain Frozen and Canned Warmwater Shrimp From the People's Republic of China:
Notice of Preliminary Determination of Sales at Less Than Fair Value, Partial
Affirmative Preliminary Determination of Critical Circumstances and Postponement
of Final Determination, 69 Fed. Reg. 42,654 (July 16, 2004)………………………..9, 34, 38, 39

Certain Frozen Warmwater Shrimp From the People's Republic of China: Final Results
and Partial Rescission of Antidumping Duty Administrative Review, 76 Fed. Reg. 51,940
(Aug. 19, 2011)……………………………………………………………………...............10, 30

Certain Frozen Warmwater Shrimp From the People's Republic of China: Notice of
Amended Final Determination of Sales at Less Than Fair Value and Antidumping
Duty Order, 70 Fed. Reg. 5149 (Feb. 1, 2005)……………………………………………..12

Certain Frozen Warmwater Shrimp From the People's Republic of China: Notice of
Final Results and Rescission, in Part, of 2004/2006 Antidumping Duty Administrative
and New Shipper Reviews, 72 Fed. Reg. 52,049 (Sept. 12, 2007)……………………………....12

Certain Frozen Warmwater Shrimp from the People's Republic of China: Notice of
Preliminary Reconsideration of Changed Circumstances Review, 78 Fed. Reg. 13,324
(Feb. 27, 2013)……………………………………………………………………………...19

Certain Frozen Warmwater Shrimp From the People's Republic of China: Preliminary
Results and Preliminary Partial Rescission of Fifth Antidumping Duty Administrative
Review,76 Fed. Reg. 8338 (Feb. 14, 2011)…………………………………………..29, 31, 32, 33

Certain Kitchen Appliance Shelving and Racks from the People's Republic of China:
Final Results and Partial Rescission of First Antidumping Duty Administrative Review,
77 Fed. Reg. 21,734 (Apr. 11, 2012)…………………………………………………………..7

Certain Stainless Steel Butt-Weld Pipe Fittings From Taiwan: Final Results and Final
Rescission in Part of Antidumping Duty Administrative Review, 70 Fed. Reg. 1870
(Jan. 11, 2005)……..........................................................................................................26

Circumvention and Scope Inquiries on the Antidumping Duty Order on Certain Frozen
Fish Fillets From the Socialist Republic of Vietnam: Partial Affirmative Determination
of Circumvention of the Antidumping Duty Order, Partial Final Termination of
Circumvention Inquiry and Final Rescission of Scope Inquiry, 71 Fed. Reg. 38,608
(July 7, 2006)…………………………………………………………………………...21, 22

Glycine from the People's Republic of China: Final Partial Affirmative Determination of
Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 73,426 (Dec. 10, 2012)………...26

Notice of Initiation of Administrative Reviews and Requests for Revocation in Part of the
Antidumping Duty Orders on Certain Frozen Warmwater Shrimp From the Socialist
Republic of Vietnam and the People's Republic of China, 75 Fed. Reg. 18,154
(Apr. 9, 2010)…………………………………………………………………………..passim

## MISCELLANEOUS AUTHORITIES

Statement of Administrative Action Uruguay Round accompanying the Uruguay Round
Agreements Act, H.R. Rep. No. 103-316……………………………………………23, 24

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**New York, New York**

_____
                                        )
AD HOC SHRIMP TRADE ACTION  )
COMMITTEE,                              )
                                        )
            **Plaintiff,**              )          **Court No. 11-00335**
                                        )
            **v.**                      )          **Hon. Donald C. Pogue,**
                                        )          **Chief Judge**
UNITED STATES,                          )
                                        )
            **Defendant,**              )
                                        )
            **and**                     )
                                        )
HILLTOP INTERNATIONAL and   )
OCEAN DUKE CORP.,                       )
                                        )
            **Defendant-Intervenors.**  )
_____)

## PLAINTIFF AD HOC SHRIMP TRADE ACTION COMMITTEE'S REPLY TO DEFENDANT-INTERVENORS' COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Plaintiff Ad Hoc Shrimp Trade Action Committee ("AHSTAC") hereby submits its reply

to Defendant Intervenors' Comments in Opposition to Final Remand Results (Apr. 15, 2013)

("D-I Comments") filed by Hilltop International ("Hilltop") and Ocean Duke Corp. ("Ocean

Duke") in response to the Final Results of Remand Redetermination Pursuant to Court Remand

(Apr. 1, 2013), Public Remand Document No. ("R.D.") 49 ("Remand Results") filed by the U.S.

Department of Commerce ("Commerce" or the "Department"), pursuant to this Court's remand

orders in Ad Hoc Shrimp Trade Action Committee v. United States, 882 F. Supp. 2d 1366 (CIT

2012) ("AHSTAC I") and Ad Hoc Shrimp Trade Action Committee v. United States, 882 F.

Supp. 2d 1377 (CIT 2013) ("AHSTAC II").  These reply comments are timely filed. See Order

(June 21, 2013).  For the reasons set forth below, AHSTAC respectfully requests that this Court

affirm the Remand Results as supported by substantial evidence and otherwise in accordance with law.

## I.   INTRODUCTION

This Court ordered remand for Commerce to reconsider the final results of the fifth administrative review ("AR5") of the antidumping duty ("AD") order on certain frozen warmwater shrimp from the People's Republic of China (the "PRC" or "China"), having the period of review ("POR") spanning February 1, 2009 through January 31, 2010. See AHSTAC I, 882 F. Supp. 2d at 1374-77; AHSTAC II, 882 F. Supp. 2d at 1381-82.  Commerce on remand applied adverse facts available ("AFA") to assign Hilltop the PRC-wide 112.81% AD margin and Defendant-Intervenors oppose this outcome. See Remand Results at 49; D-I Comments at 1-49.  While Hilltop disputes the findings that Commerce drew from the record evidence, the respondent forfeited its right to challenge those conclusions by obstructing legitimate agency inquiries. Section II, infra.  Moreover, the Commerce findings of material misrepresentation and likely AD order circumvention are supported by substantial evidence on the record. Section III, infra.  Commerce therefore properly applied total AFA to find that Hilltop was not separate from the PRC-wide entity. Section IV, infra.  Hilltop was not exempt from having to rebut the presumption of government control. Section V, infra.  Finally, the corroborated 112.81% AD margin was correctly assigned to Hilltop. Section VI, infra.

## II.   BY THWARTING COMMERCE'S LEGITIMATE INQUIRIES, HILLTOP IS PRECLUDED FROM CHALLENGING THE AGENCY FINDINGS

Hilltop cannot challenge the Commerce findings as to the record evidence because the respondent repeatedly refused to answer agency inquiries as to evidence indicating transshipment through the Kingdom of Cambodia ("Cambodia"). Section II.A, infra.  While Hilltop claims that

agency practice excused its failure to respond, Commerce exercised its unequivocal authority to investigate transshipment in administrative reviews. Section II.B, infra.

### A.  Hilltop Obstructed Commerce's Inquiries Concerning the Record Evidence

Hilltop objects to the conclusions drawn by Commerce from the record. See D-I Comments at 37-48.  Yet the respondent forfeited its ability to advance these challenges by obstructing the agency inquiries in response to evidence that AHSTAC placed on the record in the sixth administrative review ("AR6").  See Letter from Picard Kentz & Rowe LLP to U.S. Department of Commerce (Mar. 12, 2012), R.D. 4-23 ("AHSTAC March 2012 Letter"), Ex. 1: United States v. Lin, C.D. Cal. Case. No. CR-11-00297(B)-PA, Government's Position with Respect to Sentencing (Jan. 23, 2012) ("Sentencing Report"), Att. 20.   This evidence, obtained from the public record of a criminal trial involving Ocean Duke President Chang-Shau ("Duke") Lin, indicated that subject merchandise was concealed from Commerce by transshipment through Cambodia to evade AD liability. See id. at 5, 19-26, Atts. 9-11, 14, 16-21, 26-27, 37. Commerce asked detailed questions regarding this information with respect to representations that Hilltop made to the Department in the AD proceedings. See Letter from U.S. Department of Commerce to Hilltop International (June 1, 2012), R.D. 35 ("6th Supp. Questionnaire") Att. I. Hilltop was specifically requested to explain, inter alia:

- the existence of any Cambodian affiliate;

- its relationship with Ocean King (Cambodia) ("Ocean King");

- the evidence establishing that Ocean Duke imported far more shrimp from Cambodia than the country produced;

- the actual origin of shrimp imported by Ocean Duke and entered as product of Cambodia;

- the incriminatory email statements amongst principals of Hilltop and Ocean Duke; and

- the indicia of transshipment to additionally circumvent the AD order on shrimp from the Socialist Republic of Vietnam ("Vietnam") through an undisclosed Vietnamese affiliate.

See id. Att. I  ¶¶ 1-10.

Hilltop "declin{ed} to provide information . . . since the Department has determined that such information would not be relevant to this proceeding." Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Department of Commerce (June 15, 2012), R.D. 2, Confidential Remand Document No. ("C.R.D.") 5 ("6th Supp. Response") at 14.  Commerce next issued a subsequent questionnaire, clarifying that the previously requested information was in fact relevant and "providing Hilltop with another opportunity to respond to those questions that it declined to answer." Letter from U.S. Department of Commerce to Hilltop International (June 19, 2012), R.D. 35, at 1.  Hilltop once again refused to answer Commerce's questions "because the Department's well-established policies and court precedent confirm that such information would not be relevant to the instant proceeding." Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Department of Commerce (June 26, 2012) ("7th Supp. Response"), R.D. 3, C.R.D. 5, at 1.

Hilltop further declined Commerce's invitation to comment on, or submit evidence in response to, the AR6 evidence that the agency placed on the AR5 remand record – despite being granted an extension of time to file such comments or evidence. See U.S. Department of Commerce Memorandum from K. Archuletta to File (Feb. 19, 2013), R.D. 41 ("Remand Evidence Comment Memo").  In result, Hilltop has in AR5 again left Commerce's concerns over the evidence submitted by AHSTAC unaddressed. See 6th Supp. Response at 1-22; 7th Supp. Response at 1.  The AR5 record evinces Hilltop's effort to dictate the bounds of agency authority, a proposition expressly rejected by this Court over one decade ago. See Ansaldo Componenti, S.p.A. v. United States, 10 CIT 28, 37, 628 F. Supp. 198 (1986).  Using language that directly rebuts the position now advanced by Hilltop, Ansaldo clarified that the agency –

not the respondent – is the arbiter of relevance:

> The administrative record discloses several instances in which Ansaldo chose not to submit the information requested because Ansaldo had concluded such information could not serve as a basis for Commerce's administrative review. . . . <u>It is Commerce, not the respondent, that determines what information is to be provided</u> for an administrative review.

<u>Id.</u> (emphasis added).

The correct procedure would have been for Hilltop to provide the requested information while preserving its position as to relevance. <u>See</u> <u>Essar Steel Ltd. v. United States</u>, 721 F. Supp. 2d 1285, 1299 (CIT 2010) ("Regardless of whether Essar deemed the license information relevant, it nonetheless should have produced it {in} the event that Commerce reached a different conclusion."), <u>aff'd in relevant part</u>, <u>rev'd in part</u>, 678 F.3d 1268 (Fed. Cir. 2012).  "In refusing to respond pursuant to its own analysis, rather than providing the information and lodging its objection, Hilltop has preempted the Department's mandate to determine practice on a case-by-case basis, thus undermining the Department's inherent authority to protect the integrity of its proceedings." U.S. Department of Commerce Memorandum from K. Archuletta to C. Bertrand (Aug. 27, 2012), R.D. 3, C.R.D. 6 ("AFA Memo"), at 21.  Having obstructed Commerce's inquiries and declined to provide exculpatory evidence, Hilltop cannot now challenge the conclusions that the agency drew from the record evidence.

## B.  Hilltop Was Not Excused From Answering Commerce

The lone basis relied upon by Hilltop in repeatedly refusing to answer Commerce is its meritless and self-serving view of agency practice and judicial precedent.  According to Hilltop, answers need not have been provided "because the Department's well-established policies and court precedent confirm that such information would not be relevant to the instant proceeding." 7th Supp. Response at 1.  As an initial matter, Hilltop's position cannot be reconciled with this Court's recognition that Commerce has a "responsibility to prevent circumvention of the

antidumping law." Hontex Enters., Inc. v. United States, 27 CIT 272, 295, 248 F. Supp. 2d 1323,

(2003) (quotation omitted).  The agency cannot be compelled to ignore transshipment evidence

given that "Commerce has a duty to avoid the evasion of antidumping duties." Tung Mung Dev.

Co. v. United States, 26 CIT 969, 978, 219 F. Supp. 2d 1333, (2010), aff'd, 354 F.3d 1371 (Fed.

Cir. 2004) (citing Mitsubishi Elec. Corp. v. United States, 12 CIT 1025, 1046, 700 F. Supp. 538

(1988), aff'd, 898 F.2d 1577 (Fed. Cir. 1990) ("the ITA has a certain amount of discretion {to

act} . . . with the purpose in mind of preventing the intentional evasion or circumvention of the

antidumping duty law.")).  This precedent prevents Commerce from necessarily disregarding

record evidence of AD order circumvention in all circumstances.

Hilltop attempts to concoct a binding agency practice against investigating transshipment

in administrative reviews from instances where Commerce declined to do so. See D-I Comments

at 38-39.[1] These cases do not support Hilltop.  In one, Commerce explained that it "does have the

authority to investigate allegations of transshipment within the context of an administrative

review." Certain Activated Carbon from the People's Republic of China: Preliminary Results of

the Third Antidumping Duty Administrative Review, and Preliminary Rescission in Part, 76 Fed.

Reg. 23,978, 23,980 (Apr. 29, 2011) ("Activated Carbon from China").  In another, this Court

expressly declined to endorse the position advanced by Hilltop. See Globe Metallurgical Inc. v.

United States, 722 F. Supp. 2d 1372, 1381 (CIT 2010) ("This is not to suggest that Commerce

---

[1]      Before Commerce, Hilltop relied on this Court's affirming respondent selection in the
fourth administrative review ("AR4") as establishing an agency practice that excused its refusal
to provide the requested information. See Letter from Grunfeld, Desiderio, Lebowitz, Silverman
& Klestadt LLP to U.S. Department of Commerce (Mar. 29, 2012), R.D. 23-25 ("Hilltop March
2012 Rebuttal"), at 13-14 (citing Ad Hoc Shrimp Trade Action Comm. v. United States, 828 F.
Supp. 2d 1345, 1353-55 (CIT 2012)); Hilltop-Specific Case Brief (July 17, 2012), R.D. 36
("Hilltop Case Brief"), at 9 (citing Ad Hoc Shrimp, 828 F. Supp. at 1353).  Hilltop has not
repeated this argument in its comments to this Court. See D-I Comments at 37-40.

lacks any statutory authority whatsoever to address a standalone transshipment allegation like Globe's within an administrative review . . . .").

Hilltop incorrectly espouses that Commerce "does not have the authority to investigate transshipment." D-I Comments at 39.  Commerce having declined investigation where the record lacks "any reason, other than alleged transshipment" does not preclude agency inquiry when the record contains evidence supporting transshipment allegations. Certain Kitchen Appliance Shelving and Racks from the People's Republic of China: Final Results and Partial Rescission of First Antidumping Duty Administrative Review, 77 Fed. Reg. 21,734, 21,735 n.3 (Apr. 11, 2012).  Indeed, despite its arguments, Hilltop acknowledges such authority. See D-I Comments at 49 ("Hilltop does not assert that Commerce has no authority to investigate transshipment."). This recognition renders Hilltop's response to Commerce manifestly inappropriate.  Respondents cannot refuse to answer agency questions over evidence indicating transshipment based on Commerce having declined to investigate such allegations in reviews where the agency found that the record lacked support for such inquiry.  Empowering Hilltop to do so here would immunize respondents from having to address unfavorable evidence and eradicate Commerce's "inherent authority to protect the integrity of its proceedings from fraud." Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1361 (Fed. Cir. 2008).

Similarly, Hilltop wrongly asserts that "the Department is not even the proper agency to address transshipment claims" based on Commerce having deferred prior transshipment allegations to U.S. Customs and Border Protection ("CBP" or "Customs"). D-I Comments at 38 (citing Activated Carbon from China, 76 Fed. Reg. at 23,980).  Commerce's statutory mandate to conduct administrative reviews for "each entry of the subject merchandise" is frustrated by documented efforts to conceal subject merchandise, notwithstanding CBP jurisdiction to pursue

penalties. 19 U.S.C. § 1675(a)(2)(A); see Consol. Bearings Co. v. United States, 348 F.3d 997,

1004-05 (Fed. Cir. 2003). This Court has specifically held that Commerce retains an obligation

to calculate AD margins where CBP is collecting unpaid duties. Hubbell Power Sys., Inc. v.

United States, 884 F. Supp. 2d 1283, 1289 (CIT 2012) ("If Customs establishes liability under 19

U.S.C. § 1592, the calculated rate will be used to assess duties and determine penalties").

Hilltop's effort to constrain Commerce from doing anything other than merely alerting CBP

conflicts with the Department's authority to conduct administrative reviews and protect against

fraud. See 19 U.S.C. § 1675(a); Tokyo Kikai, 529 F.3d at 1361.

   Moreover, there is no basis for Hilltop's claim that the 19 U.S.C. § 1677j process creates

a prerequisite for Commerce consideration of transshipment. See D-I Comments at 37-40. With

respect to third country AD circumvention, that statute only applies to merchandise "completed

or assembled in another foreign country" by authorizing Commerce to "include such imported

merchandise within the scope of such order." 19 U.S.C. § 1677j(b); see 19 C.F.R. § 351.225. 19

U.S.C. § 1677j does not apply to transshipment; for circumvention to be capable of the statutory

redress, "there must be some processing taking place in the third country." Globe, 722 F. Supp.

2d at 1379 (quotation omitted); see, e.g., Max Fortune Indus. Co. v. United States, 2013 Ct. Intl.

Trade LEXIS 57, *3-26 (Apr. 15, 2013) (circumvention of the AD order on Chinese tissue paper

by sending jumbo rolls to Vietnam, where they were converted and exported to the United

States). Accordingly, it does not matter that no "circumvention inquiry was ever initiated with

respect to these allegations about Cambodian shrimp." D-I Comments at 40. Hilltop improperly

seeks to rationalize its failure to cooperate based on an inapplicable statute by claiming "that

transshipment must be investigated pursuant to a circumvention inquiry." Id. at 39. In short,

Hilltop's justification for not answering Commerce is entirely devoid of merit.

**III.     COMMERCE CORRECTLY ASSESSED THE RELEVANCE OF THE RECORD**

Commerce properly found that Hilltop's failure to disclose its affiliation with Ocean King constituted material misrepresentation. Section III.A, <u>infra</u>.  The Commerce finding of likely AD order circumvention is also supported by substantial evidence on the record. Section III.B, <u>infra</u>. Hilltop's various attacks on these Commerce findings should not be entertained, Section III.C, <u>infra</u>, and in any event are baseless, Section III.D, <u>infra</u>.

**A.  Failing to Disclose Ocean King Constituted Material Misrepresentation**

Hilltop does not contest its failure to identify Ocean King throughout AR5.  Rather, in defiance of <u>Ansaldo</u>, Hilltop dictates relevance by arrogating that "information regarding Ocean King was not pertinent to Commerce's POR 5 determination." D-I Comments at 2.  This assertion is incorrect.  By way of background, Duke Lin and Hilltop General Manager Kam Keung ("Peter") To discussed the need to "set up" Ocean King in July 2004 – the same month as the preliminary assignment of a 98.34% AD margin in the initial AD investigation – and was incorporated by Mr. To one year later. Sentencing Report, Att. 20; <u>Certain Frozen and Canned Warmwater Shrimp From the People's Republic of China: Notice of Preliminary Determination of Sales at Less Than Fair Value, Partial Affirmative Preliminary Determination of Critical Circumstances and Postponement of Final Determination</u>, 69 Fed. Reg. 42,654, 42,671 (July 16, 2004) ("<u>LTFV Preliminary Results</u>"); U.S. Department of Commerce Memorandum from K. Archuletta to File (June 19, 2012), R.D. 35 ("Ocean King Evidence") Att. I.  Mr. To resigned from Ocean King in September 2010. <u>See</u> Ocean King Evidence Att. I.

In AR5, Hilltop first neglected to disclose Ocean King in response to Commerce's Section A questionnaire requesting the identification of all affiliates. <u>See</u> Response of Hilltop International & Affiliates to Questionnaire Section A (June 16, 2010), Public Record No. ("P.R.") 36, Confidential Record No. ("C.R.") 6 ("Section A Response"), at 4, 15-22, Exs. A-2,

A-3, A-10.  The non-disclosure continued when Hilltop subsequently informed Commerce that: "None of the listed individuals held positions with any other firm." See Hilltop International & Affiliates Supplemental Section A Questionnaire Response (July 30, 2010), P.R. 58, C.R. 12 ("Supplemental Section A Response"), at 6.  Hilltop finally acknowledged its affiliation with Ocean King in June 2012 – nearly ten months after Commerce concluded AR5. Compare 7th Supp. Response at 2 with Certain Frozen Warmwater Shrimp From the People's Republic of China: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 76 Fed. Reg. 51,940 (Aug. 19, 2011) ("Final Results").

The disclosure only occurred after Hilltop was confronted with the Ocean King incorporation documents that Commerce obtained and placed on the record in AR6. See Ocean King Evidence Att. I; 7th Supp. Response at 2.  In the weeks leading up to that recognition, Hilltop specifically denied having any Cambodian affiliate on multiple occasions – each certified to be "complete and accurate" by Peter To and Roger Lin. Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Department of Commerce (May 31, 2012), R.D. 2, C.R.D. 4 ("Hilltop CBP Rebuttal"), at Certifications, 6 ("Hilltop is not affiliated with Ocean King. . . .  Hilltop confirms that neither the company, nor its owners or officers, invested any funds in Ocean King"); 6th Supp. Response at Certifications, 12 ("Hilltop and/or Ocean Duke . . . had no Cambodian affiliate or Cambodian affiliates."), 14 ("Ocean Duke and/or Yelin/Hilltop had no affiliation or business dealings with Ocean King on or after February 1, 2008.").  While Hilltop in AR6 tried amending a single affiliation chart, it declined the opportunity to place any corrected evidence on the AR5 remand record. See 7th Supp. Response at 2; Remand Evidence Comment Memo.

Commerce correctly concluded that Hilltop's failure to disclose Ocean King constituted material misrepresentation because affiliation "information is essential to the Department's determination of what sales and production information must be reported and whether to treat the respondent and its affiliate(s) as a single entity for purposes of the AD proceeding." Remand Results at 14.  Ocean King's Cambodian status underscores the materiality determination. AHSTAC in the first administrative review ("AR1") requested that Commerce investigate whether "Ocean Duke had any purchases of subject merchandise from Cambodia . . . , as that country does not appear to have a viable shrimp industry." Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Department of Commerce (Apr. 12, 2012), R.D. 26 ("Hilltop April 2012 Rebuttal") Att.: Letter from Dewey Ballantine LLP to U.S. Department of Commerce (Jan. 5, 2007) ("AHSTAC AR1 Pre-Verification Comments") at 3.  During the AR1 verifications, Commerce officials specifically asked Peter To and Roger Lin as to the existence of a Cambodian affiliate. See Hilltop CBP Rebuttal Ex. 2: U.S. Department of Commerce Memorandum from C. Riker & E. Begnal to File, (Feb. 28, 2007) ("Yelin Verification Memo") at 2, App. 2; Hilltop CBP Rebuttal Ex. 3: U.S. Department of Commerce Memorandum from C. Riker & E. Begnal to File (Feb. 28, 2007) ("Ocean Duke Verification Memo") at 3, App. 2.

Moreover, Commerce painstakingly established a nexus between the Ocean King misrepresentation and the zero percent AD margin originally assigned to Hilltop in AR5. See AFA Memo at 10-11, 15-22; Remand Results at 11, 17-18, 33.  Commerce analyzed import patterns to conclude that the misrepresentation "enabled Hilltop to maintain its U.S. customer base until the final results of AR1 were published, when it received a de minimis margin based on relatively few entries and was able to resume its shipments from the PRC with a zero cash deposit rate." Remand Results at 17.  This finding is supported by CBP data that Commerce

placed on the record from the POR of the third administrative review ("AR3") – when cash deposit rate changed from the 82.27% AD margin assigned in the investigation to the de minimis AD margin calculated for AR1. See U.S. Department of Commerce Memorandum from K. Archuletta to File (July 6, 2012), R.D. 3, C.R.D. 5, 8; Letter from Picard Kentz & Rowe LLP to U.S. Department of Commerce (July 11, 2012), R.D. 3, C.R.D. 5-6; Certain Frozen Warmwater Shrimp from the People's Republic of China: Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 70 Fed. Reg. 5149, 5151 (Feb. 1, 2005); Certain Frozen Warmwater Shrimp From the People's Republic of China: Notice of Final Results and Rescission, in Part, of 2004/2006 Antidumping Duty Administrative and New Shipper Reviews, 72 Fed. Reg. 52,049, 52,052 (Sept. 12, 2007); 19 C.F.R. § 351.106(c)(1).

In short, the Commerce finding that Hilltop's failure to disclose its affiliation with Ocean King constitutes material misrepresentation is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938), accord Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984). It was reasonable for the agency to conclude that the timely disclosure of such highly relevant information may have changed the course of AR5.

### B. Record Evidence Establishes Likely AD Order Circumvention

Commerce's finding that Ocean King likely served as a vehicle to evade AD liability is supported "by substantial evidence on the record." 19 U.S.C. § 1516a(b)(1)(B)(i); see Remand Results at 17. This evidence includes emails amongst the principals of Hilltop and Ocean Duke: requiring "new master cartons for Cambodia origin products" as opposed to mere relabeling; creating Ocean King and needing to "send some raw material through the border"; mandating that the respondent not "have any involve {sic} or paper related!"; and ensuring a "strict security system to protect" the Cambodian operation. Sentencing Report Atts. 14, 19, 20, 37. The

evidence also featured multiple government reports, including an investigator from Commerce's

own National Oceanic and Atmospheric Administration ("NOAA") having in March 2007:

> spoke on the phone with Mr. Ken MacKenzie, a former employee of Ocean Duke
> Corporation (ODC) . . . .  He told me { } <u>ODC would have to pay 108% tariff for
> Chinese shrimp, and that much of it came out of Cambodia.  He told me that he
> thought it might be transshipped or trucked to Cambodia to avoid tariffs.</u>  He also
> told me that he had previously spoken with Roger Lin about the shrimp that ODC
> imported from Cambodia.  He estimated that ODC imported approximately
> 3,000,000 lb {of} shrimp from Cambodia, and that <u>he and Roger Lin discussed
> how ODC imported more shrimp than Cambodia produced</u>.

<u>Id.</u> Att. 21 (emphases added).

The record establishes that Cambodia produced far less shrimp than Ocean Duke claimed

to have sourced from that country.  While Ocean Duke entered 15 million pounds of purportedly

Cambodian shrimp between May 2004 and July 2005, the Cambodian Ministry of Agriculture

estimated that the country produced only 397,000 pounds of shrimp between all of 2004 and

2005. <u>See</u> Sentencing Report at 22-23, Atts. 17, 18 Att. 2 thereto.  This figure was corroborated

by official United Nations statistics and an interview with Cambodian Fisheries Administration

Director General Dr. Nao Thuok. <u>See id.;</u> Remand Results at 43-44.  By contrast, there is an

absence of evidence to conclude that transshipment did not occur: "The record contains no

reasonable explanation, and Hilltop has not attempted to offer any such explanation, as to how

Ocean Duke was able to source more . . . than **3600 times** the official production, of shrimp from

Cambodia." Remand Results at 43 (emphasis in original).  Commerce correctly evaluated

Hilltop's refusal to provide exonerating evidence in finding likely transshipment:

> Hilltop's argument that the government's allegations were based on sheer
> speculation does not convince the Department that they are unfounded in light of
> the record evidence and Hilltop's refusal to provide any exonerating evidence.  <u>If
> these allegations are based on sheer speculation, as Hilltop repeatedly claims, it
> would have been in Hilltop's interest to respond to the Department's repeated
> requests for information rather than argue that the information is irrelevant to the
> Department's analysis.</u>

Id. at 47 (emphasis added).

### C. Hilltop's Attacks on the Commerce Findings Should Not Be Entertained

Hilltop advances arguments intending to undermine the Commerce findings regarding

material misrepresentation and likely transshipment. See D-I Comments at 37-48.  These

contentions comprise an improper effort by Hilltop to benefit from its refusal to provide

Commerce with the requested information.  According to Hilltop:

- "Commerce has presumed more information than was actually stated in the email, and it has failed to consider alternate interpretations of these communications." Id. at 45;

- "the only other country ever referenced in these emails is Vietnam." Id.;

- "These emails . . . fail to establish a prima facie case that Hilltop was engaged in transshipment." Id. at 44-45;

- Commerce selectively relied on the record for not honoring "Cambodian country-of-origin documents stamped by Cambodian officials" and having "completely discounted Dr. Thouk's statement that the Cambodian border enforcement is 'very strong.'" Id. at 44 (quoting Sentencing Report Att. 18);

- "the affiliation with Ocean King did not affect any of the reported sales and FOP data for POR 5." Id. at 13;

- Commerce has not proven "that Hilltop was being willfully misleading by failing to report this affiliation." Id. at 16;

- after it finally produced Ocean King documentation, Commerce had ample time to have "made additional inquiries" in response to this "wealth of information." Id. at 13-14;

- "Commerce has an obligation to make the questions affected by affiliation issues clear, in light of its own recognition that affiliation is a complex concept and its decision to develop its practice in this area on a case by case basis." Id. at 16-17 (quoting Ta Chen Stainless Steel Pipe, Ltd. v. United States, 23 CIT 804, 820 (1999));

- cash deposit rates are not used "*for any reason whatsoever* during the course of the review." Id. at 47 (emphasis in original); and

- "Ocean King was not established until July 2005." Id. at 44 (emphasis in original).

These arguments should not even be entertained given Hilltop's refusal to offer any

exonerating evidence or explanation in response to Commerce's direct inquires and reopening

the record. <u>See</u> 6th Supp. Response at 1-22; 7th Supp. Response at 1; Remand Evidence

Comment Memo.  Hilltop failed to provide any "alternative interpretations" of the information

attached to the Sentencing Report, let alone submit evidence from which alternative conclusions

could be drawn. D-I Comments at 45.  Hilltop – not Commerce – carried the burden of placing

information on the record to counter the Sentencing Report in AR6 and the agency analyses in

AR5. <u>See</u> <u>Zenith Elecs. Corp. v. United States</u>, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The

burden of production should belong to the party in possession of the necessary information.").

As this Court and the U.S. Court of Appeals for the Federal Circuit ("CAFC") recognize, "the

burden of creating an adequate record lies with {interested parties} and not with Commerce."

<u>Maclean-Fogg Co. v. United States</u>, 836 F. Supp. 2d 1367, 1376 (CIT 2012) (quoting <u>QVD</u>

<u>Food Co. v. United States</u>, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  Hilltop improperly inverts

this burden by faulting Commerce for not having done enough with respect to the ample

evidentiary support for the agency findings of material misrepresentation and likely

transshipment. <u>See</u> D-I Comments at 12-13; Section III.A, B, <u>supra</u>.

 The fundamental problem with Hilltop's attack on the Commerce findings is its incorrect

supposition that the agency must prove that transshipment in fact occurred. <u>See</u> D-I Comments

at 45.  However, having thwarted Commerce inquiries on the subject, Hilltop cannot credibly

contend that the agency must conclusively establish AD order circumvention before attaching

significance to the Sentencing Report and conceded affiliation misrepresentation.  The standard

that Hilltop advocates would encourage respondents faced with unfavorable evidence to flout

Commerce investigations, empowering them to afterwards refute findings made by the agency

based on a record hindered <u>by their failure to cooperate</u>.  Allowing Hilltop to avoid consequence

for its obstructionism is especially inappropriate on this record because the respondent

generated suspicion as to its activities by providing Commerce with the following information:

- the AR1 verification reports revealing that Peter To and Roger Lin concealed the Ocean King affiliation from Commerce officials during on-site questioning, see Yelin Verification Memo at 2, App. 2; Ocean Duke Verification Memo at 3, App. 2;

- the AHSTAC AR1 comments demonstrating a compelling basis for disclosure of the existence of a Cambodian affiliate, see AHSTAC AR1 Pre-Verification Comments at 3;

- the Duke Lin sentencing transcript in which the U.S. Attorney explains the lack of prosecution for transshipment due to search warrant admissibility concerns, as opposed to any culpability deficit, see Hilltop March 2012 Rebuttal Att. 2: United States v. Lin, C.D. Cal. Case. No. CR-11-00297(B)-PA, Transcript of Sentencing (Feb. 13, 2012) at 36-37; and

- the purportedly exculpatory grand jury testimony of Hilltop's consultant that identified an undisclosed Indonesian affiliate, corroborating record evidence as to the existence of an additional affiliate in that country, compare Hilltop March 2012 Rebuttal, Att. 4.: Testimony of Charles Cardile (Nov. 12, 2009) ("Cardile Testimony") at 17:16-17 with Sentencing Report Att. 26 at 3.

Hilltop itself implicitly acknowledged that the evidence was incriminating by claiming

that answering Commerce's questions would be "in violation of the spirit of the plea agreement

already finalized with Mr. Lin." Hilltop-Specific Issues Rebuttal Brief (July 23, 2012), R.D. 37,

("Hilltop Rebuttal Brief"), at 13 (emphasis added).  Yet the plea agreement does not mention

Hilltop, let alone immunize the respondent before Commerce. See AHSTAC March 2012 Letter

Ex. 7.  Hilltop references the criminal prosecution that yielded the Sentencing Report in a

misguided effort to conflate proving transshipment beyond a reasonable doubt with whether

Commerce's findings as to the record are supported by substantial evidence. See D-I Comments

at 42.  Tellingly, Duke Lin during those proceedings applied to have the Sentencing Report

placed under seal. See Letter from Picard Kentz & Rowe LLP to U.S. Department of Commerce

(Apr. 6, 2012), R.D. 25-26, Att. 1: Docket Sheet, United States v. Lin, C.D. Cal. Case. No. CR-

11-00297(B)-PA, at 7.

Before Commerce and this Court, Hilltop continued with its effort to suppress the evidence of transshipment.  When AHSTAC placed the Sentencing Report on the record, Hilltop repeatedly demanded that Commerce reject the submission.  See Hilltop March 2012 Rebuttal at 22-25; Hilltop April 2012 Rebuttal at 2-3; Hilltop Case Brief at 11-14.  Hilltop thereafter in this Court challenged Commerce's acceptance of the Sentencing Report, despite the agency's recognized authority – and, indeed, legal obligation – to consider evidence of fraud. See Hilltop Int'l v. United States, Case No. 12-289, Complaint ¶¶ 32-34 (Sept. 19, 2012); Home Prods. Int'l v. United States, 633 F.3d 1369, 1376-81 (Fed. Cir. 2011); US Magnesium LLC v. United States, 895 F. Supp. 2d 1319, 1322-24 (CIT 2013).  Given its pattern of obstructionism, Hilltop cannot legitimately challenge the findings that Commerce made based on the record evidence.

### D.  Hilltop's Attacks on the Commerce Findings Are Meritless

To the extent that this Court considers Hilltop's challenges to the record evidence, they are each without merit.  The incriminatory emails amongst Duke Lin and Peter To do reference China. See Sentencing Report Atts. 37 ("**Be Careful in China**") (emphasis in original), 20 ("Yelin H K cannot have any involve or any paper related!").  The NOAA report implicates Roger Lin as having direct knowledge of Ocean Duke circumventing AD liability on Chinese shrimp. See id. Att. 21.  That Vietnam is also referenced in the emails between Duke Lin and Peter To supports Commerce having inquired as to the circumvention of that AD order as well. See id. Att. 14, 19; 6th Supp. Questionnaire ¶ 5(d)(9).  Hilltop refused to answer. See 6th Supp. Response at 15; 7th Supp. Response at 1.  The references to additional circumvention of the AD order on Vietnamese shrimp therefore support Commerce's findings, rather than absolve Hilltop from consequence as the respondent perversely asserts. See D-I Comments at 45.

Commerce found an "incredible . . . discrepancy" between the amount of shrimp Ocean

Duke claimed to have sourced from Cambodia and that reflected in corroborated official

statistics. Remand Results at 43.  While the respondent claims that Commerce ignored Dr.

Thuok's statement as to border security, "Hilltop's argument assumes that any subject

merchandise transshipped through Cambodia must have been smuggled through the border but

neglects the very real possibility that shrimp could have been legitimately imported from the

PRC or Vietnam and then repackaged by the Cambodian affiliate, as the record suggests."

Remand Results at 40-41 (citing Sentencing Report Att. 14); see D-I Comments at 44.

Commerce properly discounted the Cambodian country-of-origin documents because Dr. Thuok

explained that "his staff" compared them only against the amount of product "ready to ship {at}

the port of export and not at the aquaculture facility." Sentencing Report Att. 18 at 4 ("THUOK

added that shrimp is processed and boxed in the facility and there is no information on where it

is harvested.  THUOK stated no one compares the export numbers on the shrimp export

declaration and the report from the Provinces.") (emphases added); see D-I Comments at 44.

The record demonstrates that Hilltop's affiliation with Ocean King resulted from a

straightforward application of the statutory definition. See 19 U.S.C.§ 1677(33)(B) ("The

following persons shall be considered to be 'affiliated' . . . Any officer or director of an

organization and such organization").  Mr. To in June 2005 incorporated Ocean King with a

personal contribution of $350,000 using his business address, and resigned in September 2010 –

all while serving as the Hilltop General Manager. See 7th Supp. Response Att. 1.  Hilltop has

never provided any plausible excuse for its repeated failure to disclose Ocean King despite

specific inquiries as to Cambodian affiliates across multiple reviews, other than speculating that

it "may have been due to the fact that Mr. To had no operational involvement with Ocean

King." D-I Comments at 17 n.22 (emphasis added); Hilltop Rebuttal Brief at 9 ("Mr. To Kam

Keung's prior statements on affiliation may have been in error (e.g., due to his lack of

operational involvement with Ocean King or for whatever reason") (emphasis added).[2] There is

no support for Hilltop's claim that the non-disclosure resulted from affiliation complexity or

confusion. See D-I Comments at 16-17.  Indeed, "Hilltop had been well aware of the

Department's regulations and practice regarding affiliations throughout the proceeding and was

the subject of a thorough affiliation analysis in AR5." Remand Results at 34.

      Hilltop wrongly blames Commerce for not sufficiently investigating Ocean King and

faults the agency for not having gleaned favorable inferences based on the fraction of responsive

information provided. See D-I Comments at 12-13, 45.  Hilltop claims that Commerce had

ample time to have done more, despite declining to utilize an extension of time granted by the

agency to submit comment and evidence. See id.; Remand Evidence Comment Memo.  Again,

Hilltop improperly inverts the burden of creating a supportive record from the respondent to the

agency. See D-I Comments at 12-13; Maclean-Fogg, 836 F. Supp. 2d at 1376; QVD Food, 658

F.3d at 1324.  With the Ocean King affiliation concealed throughout AR5, Commerce correctly

concluded that it "was not able to fully examine the impact this relationship may have had on

the sale and production of subject merchandise, the implications it may have held for Hilltop's

supply chain and movement of goods, or whether there were any undisclosed affiliations in this

review and prior reviews, as the evidence suggests." Remand Results at 13.

---

[2]     Peter To in 2007 provided Commerce with a sworn statement, under penalty of perjury, "regarding his exclusive control over the day-to-day operations of Hilltop." U.S. Department of Commerce Memorandum from C. Marsh to P. Piquado (Feb. 21, 2013) accompanying Certain Frozen Warmwater Shrimp from the People's Republic of China: Notice of Preliminary Reconsideration of Changed Circumstances Review, 78 Fed. Reg. 13,324 (Feb. 27, 2013), available at: http://ia.ita.doc.gov/frn/summary/PRC/2013-04550-1.pdf, at 11.  This self-described hands-on managerial style renders it all the more incredulous that Peter To could have been unaware of his involvement with Ocean King.

Despite Hilltop's assertion, Commerce did not have to affirmatively prove that Ocean King shipped subject merchandise during the AR5 POR. <u>See</u> D-I Comments at 13. This straw-man argument attempts to move the focus away from where it belongs – on Hilltop's repeated refusal to answer Commerce's questions about the record evidence. <u>See</u> 6th Supp. Response at 1-22; 7th Supp. Response at 1. Hilltop concedes that it sold merchandise from Ocean King through AR4, and its refusal to answer Commerce's inquiries prevented the agency from confirming the claimed lack of Ocean King involvement in AR5. <u>See</u> 7th Supp. Response at 1-2. Moreover, Commerce established a nexus between the Ocean King misrepresentation and AR5 using CBP import data for the AR3 POR. <u>See</u> AFA Memo at 10-11, 15-22; Remand Results at 11, 17-18, 33. This evidentiary support disproves Hilltop's claim that Commerce's analyses "are based on nothing beyond conjecture." D-I Comments at 41.

Hilltop declined to comment on the AR3 POR import data before Commerce and again does not argue that a contrary conclusion should result from that data. <u>See id.</u> at 45-47. Hilltop instead seeks to circumscribe the bounds of agency authority by claiming that Commerce does not use cash deposit "rates <u>*for any reason whatsoever*</u> during the course of the review." <u>Id.</u> at 47 (emphasis in original).[3] Regardless of whether "deposit rates are not used in the Department's antidumping duty margin calculation," Commerce need not ignore such rates in establishing the linkage between Hilltop's misconduct and AR5. <u>Id.</u> By contrast, Commerce properly considered the economic reality that the zero percent cash deposit rates facilitated Hilltop's importation of commercial quantities of subject merchandise in AR5. <u>See</u> AFA Memo at 10-11,

---

[3]     To support its position that Commerce cannot consider cash deposit rates, Hilltop notes the agency "practice not to deduct antidumping duty as costs." D-I Comments at 47 n.54 (quotation omitted). Neither such practice, nor this Court having affirmed Commerce's refusal to deduct the interest earned on AD cash deposits, prevent the agency from considering the impact that these deposits have on the AD order life-cycle. <u>See</u> <u>Pakfood Pub. Co. v. United States</u>, 724 F. Supp. 2d 1327, 1353-57 (CIT 2010), <u>aff'd</u>, 453 Fed. Appx. 986 (Fed. Cir. 2011).

15-22; Remand Results at 11, 17-18, 33.  This reasoned analysis of record evidence renders the nexus that Commerce found between the Ocean King misrepresentation and AR5 supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison, 305 U.S. at 229, accord Matsushita, 750 F.2d at 933.

Finally, Hilltop incorrectly claims that Ocean King's July 2005 establishment invalidates the Commerce findings.  See D-I Comments at 44.  Through June 2006, during the entire AR1 POR and well into the second administrative review POR, Ocean Duke imported significant commercial quantities of shrimp from Ocean King claimed be of Cambodian origin.  See Sentencing Report Atts. 10, 11.  Commerce properly found that this shrimp was unlikely to have originated in Cambodia given the country's limited production between 2005 and 2006 documented in the record.  See id. Atts. 17 (United Nations statistics for 1999 through 2008), 18 Att. 2 thereto (Cambodia's shrimp production statistics for 2004 and 2005).  Additional circumvention concerns are raised by the vast quantities of purportedly Cambodian shrimp that Ocean Duke imported before July 2005 from Lian Heng Investment Co. Ltd. ("Lian Heng"), per CBP data on the record.  See id. Atts. 9-10; U.S. Department of Commerce Memorandum from K. Archuletta to File (May 17, 2012), R.D. 1, C.R.D. 3, 7; Letter from Picard Kentz & Rowe LLP to U.S. Department of Commerce (May 24, 2012), R.D. 1, C.R.D. 4, at 10-11.

In a 2006 proceeding regarding the AD order on fish fillets from Vietnam, Commerce determined "that Lian Heng has circumvented the Order by importing Vietnamese-origin live fish into Cambodia, where it was subsequently processed and completed into frozen fish fillets for export to the United States." Circumvention and Scope Inquiries on the Antidumping Duty Order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Partial Affirmative Determination of Circumvention of the Antidumping Duty Order, Partial Final Termination of

Circumvention Inquiry and Final Rescission of Scope Inquiry, 71 Fed. Reg. 38,608, 38,610

(July 7, 2006).  Commerce was there able to employ 19 U.S.C. § 1677j because of the

processing in Cambodia – in contrast to Hilltop's assertion that the statutory provision is

available to redress transshipment. See D-I Comments at 37, 40, 49; Section II.B, supra.

Commerce in AR6 sought "a detailed explanation, including supporting documentation, of the

country-of-origin of the shrimp exported by Lian Heng." 6th Supp. Questionnaire Att. I ¶ 8.

Hilltop refused to answer, leaving the relationship unresolved. See Remand Results at 44-45; 6th

Supp. Response at 19; 7th Supp. Response at 1.  The Ocean King incorporation chronology

therefore supports Commerce's findings as opposed to exonerating Hilltop.

**IV.    COMMERCE PROPERLY APPLIED TOTAL AFA TO HILLTOP**

Each statutory pre-requisite for the application of AFA to Hilltop is satisfied and the

information "gap" belabored by Hilltop is whether the presumption of government control was

rebutted. Section IV.A, infra.  Commerce properly applied total AFA to treat Hilltop as part of

the PRC-wide entity, as the respondent's objections are without merit. Section IV.B, infra.

**A.  All AFA Prerequisites Are Satisfied**

Before Commerce can apply AFA, one of the four statutory criteria for the application of

"facts otherwise available" ("FA") must be satisfied. 19 U.S.C. § 1677e(a)(2).  The record

establishes that the statutory FA criteria – any one of which alone would be sufficient – were

each satisfied in AR5 because, by failing to disclose its affiliation with Ocean King, Hilltop:

- "with{e}ld{} information that has been requested by {Commerce}." 19 U.S.C.
  § 1677e(a)(2)(A); see Remand Results at 16, 23, 27, 31, 39; Plaintiff Ad Hoc Shrimp
  Trade Action Committee's Comments on Final Results of Remand Redetermination
  Pursuant to Court Remand (Apr. 15, 2013) ("AHSTAC Remand Comments") at 23-25;

- "fail{ed} to provide such information by the deadlines for submission of the
  information." 19 U.S.C. § 1677e(a)(2)(B); see Remand Results at 15, 21-22, 27, 39;
  AHSTAC Remand Comments at 25-26;

- "significantly imped{ed} a proceeding." 19 U.S.C. § 1677e(a)(2)(C); <u>see</u> Remand Results at 19, 21, 32; AHSTAC Remand Comments at 26-29; <u>and</u>

- provided information that "cannot be verified." 19 U.S.C. § 1677e(a)(2)(D); <u>see</u> Remand Results at 13, 15, 17, 21, 22, 39; AHSTAC Remand Comments at 29-31.

The sole statutory prerequisite for application of AFA, in addition to FA being appropriate, is a finding "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from" Commerce. 19 U.S.C. § 1677e(b). Once again, the record establishes that this statutory criterion is satisfied. <u>See</u> Remand Results at 15, 24-23, 39, 49; AHSTAC Remand Comments at 32-35.  Hilltop does not challenge Commerce's application of AFA based on the statutory language authorizing either FA or AFA. <u>See</u> D-I Comments at 1-49.  Rather, Hilltop alleges that Commerce erred by not fully considering that FA "is only appropriate to 'fill gaps' in the record of missing information." <u>Id.</u> at 6 (citing <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1381 (Fed. Cir. 2003); <u>Ningbo Dafa Chem. Fiber Co. v. United States</u>, 580 F.3d 1247, 1255 (Fed. Cir. 2009)).

Contrary to Hilltop's claim, Commerce <u>did</u> "establish how Hilltop's omission of Ocean King from its list of third country affiliates has caused a 'gap' of necessary information in the record." <u>Id.</u> at 7.  Commerce painstakingly explained how the material misrepresentation rendered all of Hilltop's information unusable, emphasizing that the tainted Section A Response set forth both affiliation information and separate rate eligibility. <u>See</u> Remand Results at 14-18, 23-24, 30-31, 36-37, 49; Section A Response at 2-22, Exs. A-2-11.  In result, a "gap" existed as to whether record evidence supported the respondent's claim of independence from government control. Section V, <u>infra</u>.  Such a Commerce finding was expressly affirmed by this Court in the investigation of oil country tubular goods ("OCTGs") from China. <u>See</u> <u>Jiangsu Changbao Steel Tube Co. v. United States</u>, 884 F. Supp. 2d 1295, 1302-13 (CIT 2012).  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), while cited

by Hilltop, supports the Remand Results by authorizing Commerce to employ FA "where requested information . . . cannot be used." D-I Comments at 6 (quoting SAA, H.R. Rep. No. 103-316, at 869).  With Hilltop not having established its independence government control, Commerce properly employed total AFA as a means of "filling gaps in the record due to deficient submissions of other causes." Id. at 7 (quoting SAA, H.R. Rep. No. 103-316, at 869).

### B.  Hilltop's Arguments Against the Application of Total AFA Are Meritless

Hilltop's objections to the application of total AFA comprise a baseless effort to avoid consequence for its malfeasance.  Hilltop first claims that Commerce was compelled to treat Ocean King the exact same way as the agency did other third-country affiliates disclosed during the course of AR5 – i.e., by requesting only that the affiliation chart be updated without seeking any additional information. See id. at 8-9 & nn.8-10.  However, the voluntary disclosure of those affiliates contrasts with Ocean King which Hilltop "failed to apprise Commerce . . . until Commerce itself placed evidence on the record tending to contradict {the respondent's} representations." Changbao, 884 F. Supp. 2d at 1306.  This Court has expressly affirmed Commerce's "inference that a respondent's failure to disclose willful deception until faced with contradictory evidence implicates the reliability of that respondent's remaining representations." Id.  This is not an instance where "Hilltop simply omitted a third country affiliate from its list of affiliates." D-I Comments at 16.  Hilltop's portrayal of the non-disclosure as an innocuous oversight is unpersuasive given the complete absence of any supporting explanation or record evidence. See id. at 16-17 & n.22.  Rather, Commerce properly applied total AFA after concluding that such concealment "impugn{ed} the overall credibility of information supplied by Hilltop officials." Remand Results at 30.  "Commerce's determination that a deficiency in credibility affected the totality of {the respondent's} submissions was supported by the record." Changbao, 884 F. Supp. 2d at 1306.

- 24 -

Hilltop acknowledges that Commerce can and does render all respondent information unusable based on material misrepresentation, but argues that its misconduct "is not an instance in which a company submitted falsified records." D-I Comments at 16 & nn.18-19.  No authority is provided for the proposition that falsified records are a prerequisite for Commerce being able to invalidate all respondent information, because none exists. See id.  Moreover, the certified Section A and Supplemental Section A Responses omitting Ocean King are "falsified records." Id.  The Ocean King misrepresentation – perpetuated over multiple reviews and at verifications, on a topic subject to repeated Commerce inquiries – constitutes "such a grave deficiency that it warranted the rejection of all of Hilltop's data and application of total AFA." Id. at 48-49.[4]

Hilltop argues that Commerce may only reject all respondent information "if the missing or unusable information is 'core' rather than 'tangential.'" Id. at 15 (quoting Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 2011 Ct. Intl. Trade LEXIS 123, *40 (Oct. 12, 2011); Shanghai Taoen Int'l Trading Co. v. United States, 29 CIT 189, 199 n.13 (2005)).  This standard is satisfied given the evidentiary support for the Ocean King misrepresentation being material. Section III.A, supra.  In accordance with CAFC precedent, Hilltop's repeated failure to disclose its affiliation until confronted with the Ocean King incorporation evidence created a "situation{ } where none of the reported data is reliable or usable." Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011).  By Hilltop's own articulation, application of total AFA was proper because, as a result of

---

[4]     Hilltop belabors a "slippery slope": "Under Commerce's theory, any omission by a respondent - regardless of the significance of the information – provides Commerce the authority to reject all of the respondent's data. . . ." D-I Comments at 18.  Yet Commerce properly and repeatedly found the Ocean King omission to be "material." Remand Results at 13-19, 23, 30-35. Accordingly, the "significance of the information" misrepresented factored prominently in Commerce's determination to "reject all of the respondent's data." D-I Comments at 18.

the Ocean King misrepresentation, "the deficiencies are so pervasive that they permeate all aspects of the reported data." D-I Comments at 15.

Hilltop contends that its failure to disclose Ocean King "should have no consequence." Id. at 9 (emphasis added).  In an effort to avoid repercussion, Hilltop misplaces reliance on an instance where Commerce found affiliation misrepresentation, but opted to apply partial AFA rather than reject all information.  See D-I Comments at 9-10, 14 & nn.12-13.  Neither that determination nor the decision of this Court taking issue with the agency analysis preclude Commerce from applying total AFA where the necessary findings are supported by substantial evidence.  See Issues and Decision Memorandum (cmt. 1) accompanying Certain Stainless Steel Butt-Weld Pipe Fittings From Taiwan: Final Results and Final Rescission in Part of Antidumping Duty Administrative Review, 70 Fed. Reg. 1870 (Jan. 11, 2005); Ta Chen Stainless Steel Pipe Co. v. United States, 31 CIT 794, 821-22 (2007).[5]  Hilltop cannot avoid responsibility for its affiliation misrepresentation simply because Commerce chose not to apply partial AFA in AR5.  Such self-serving logic does not displace the propriety of Commerce having applied total AFA to Hilltop. Sections III.A, B, IV.A, supra.  Moreover, Hilltop's claim that Commerce must simply amend the affiliation chart – as requested in AR6 – is undercut by its failure to submit any corrected information in AR5, despite having an opportunity to do so.  See D-I Comments at 8-9; 7th Supp. Response at 2; Remand Evidence Comment Memo.

---

[5]      Hilltop also misplaces reliance on Commerce's 19 U.S.C. § 1677j(b) finding that the AD order on glycine from China was circumvented by the use of Chinese-origin inputs in India. See D-Comments at 11.  Commerce declined to apply AFA to the U.S. affiliates of the respondents found responsible for circumvention because "{t}he Department's finding with respect to the anti-circumvention proceeding pertains to the producers of the product." Issues and Decision Memorandum (cmt. 1) accompanying Glycine from the People's Republic of China: Final Partial Affirmative Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 73,426 (Dec. 10, 2012).  Commerce's unwillingness to extend AFA to affiliates in this context does not preclude the application of AFA to Hilltop based on the non-disclosure of Ocean King.

Hilltop's demand for impunity lays bare the absurdity of its position, as the respondent does not suggest partial AFA or any other consequence for its misconduct. See D-I Comments at 1-49.  If parties can misrepresent material information and obstruct agency inquiries without repercussion when caught, there is no reason for them to provide accurate responses in the first instance.  Total AFA was properly applied in AR5 given the CAFC recognition that "Commerce enjoys 'particularly great' discretion in applying an AFA margin to an uncooperative respondent" and the agency employs AFA as a "proper deterrent to non-cooperation with its investigations." KYD, Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010) (quoting PAM, S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009)); F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

V.      **HILLTOP WAS NOT EXEMPT FROM HAVING TO REBUT THE PRESUMPTION OF STATE CONTROL**

Hilltop claims that its exemption from Commerce's government control analysis invalidates the application of AFA. See D-I Comments at 18-24.  Yet Hilltop during AR5 requested and received an agency finding that it was not subject to government control. Section V.A, infra.  In accordance with applicable recent precedent, Commerce properly reversed this determination after Hilltop's submitted information was rendered unusable. Section V.B, infra.

A.      **Commerce Initially Found that Hilltop Rebutted the Presumption**

At the outset of AR5, Hilltop requested a review on behalf of "Yangjiang City Yelin Hoi Tat Quick Frozen Seafood Co., Ltd, Fuqing Yihua Aquatic Food Co., Ltd., and Hilltop International, Chinese producers and exporters of subject merchandise and its U.S affiliate Ocean Duke Corporation (collectively, 'Hilltop'), an exporter and producer of frozen warmwater shrimp covered by the . . . antidumping order." Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Department of Commerce (Feb. 26, 2010), P.R. 3 ("Hilltop

Review Request"), at 1-2 (footnote omitted) (emphases added).  In initiating AR5 of the AD

orders on shrimp from China and Vietnam, Commerce described its process for receiving and

analyzing claims that respondents are separate from the PRC-wide or Vietnam-wide entities:

> In proceedings involving non-market economy ("NME") countries, the
> Department begins with a rebuttable presumption that all companies within the
> country are subject to government control and thus, should be assigned a single
> antidumping duty deposit rate.  It is the Department's policy to assign all
> exporters of merchandise subject to an administrative review in an NME country
> this single rate unless an exporter can demonstrate that it is sufficiently
> independent so as to be entitled to a separate rate.
>
> To establish whether a firm is sufficiently independent from government control
> of its export activities to be entitled to a separate rate, the Department analyzes
> each entity exporting the subject merchandise . . . .  In accordance with the
> separate-rates criteria, the Department assigns separate rates to companies in
> NME cases only if respondents can demonstrate the absence of both de jure and
> de facto government control over export activities.
>
> All firms listed below that wish to qualify for separate-rate status in the
> antidumping duty administrative reviews of frozen warmwater shrimp from
> Vietnam and the PRC must timely file, as appropriate, either a separate-rate
> application or certification, as described below.  In order to demonstrate separate-
> rate eligibility, entities for which a review was requested and which were assigned
> a separate rate in the most recently completed segment of this proceeding in
> which they participated, must timely file a separate rate certification that they
> continue to meet the criteria for obtaining a separate rate. . . .  The deadline and
> requirement for submitting the Separate Rate Certification applies equally to
> NME-owned firms, wholly foreign-owned firms, and foreign sellers who
> purchase and export subject merchandise to the United States.

Notice of Initiation of Administrative Reviews and Requests for Revocation in Part of the

Antidumping Duty Orders on Certain Frozen Warmwater Shrimp From the Socialist Republic of

Vietnam and the People's Republic of China, 75 Fed. Reg. 18,154, 18,154-55 (Apr. 9, 2010),

P.R. 10 ("Initiation Notice") (citations omitted) (emphases added).

As were "all exporters of merchandise subject to an administrative review" of an AD

order for an NME country, Hilltop was in AR5 subject to the "presumption" of "government

control" as an "entity exporting the subject merchandise." Id. at 18,154-55.  Indeed, Hilltop was

specifically listed in the Initiation Notice as able to apply for separate rate status. Id. at 18,158.

Again identifying itself as "Chinese producers and exporters of subject merchandise," Hilltop

"request{ed} permission to { } file all Separate Rates information and data in the context of the

Section A response." Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to

U.S. Department of Commerce (June 1, 2010), P.R. 33, at 1.  Commerce allowed Hilltop to do

so. See Letter from C. Bertrand, U.S. Department of Commerce, to Hilltop International (June 3,

2010), P.R. 35 ("note that all separate rate information may be filed in the Section A response

and that it is not necessary to file Separate Rate Certification.").  As permitted, Hilltop in its

Section A Response provided Commerce with the information necessary to determine whether

the respondent had rebutted the presumption of government control and was thereby eligible for

a rate separate from the PRC-wide entity. See Section A Response at 2-15, Exs. A-2-8.

Commerce in February 2011 preliminarily determined that Hilltop was eligible for a

separate rate based on the Section A Response.  As Commerce found: "Hilltop has reported that

it is a Hong Kong based exporter of subject merchandise. . . .  Consequently, we preliminarily

determine that Hilltop . . . met the criteria for a separate rate." Certain Frozen Warmwater

Shrimp From the People's Republic of China: Preliminary Results and Preliminary Partial

Rescission of Fifth Antidumping Duty Administrative Review, 76 Fed. Reg. 8338, 8341 (Feb.

14, 2011), P.R. 97 ("Preliminary Results") (citing Section A Response at 1).  Accepting Hilltop's

submitted information as to its Hong Kong location, the Department explained that "a separate

rate analysis is not necessary to determine whether it is independent from government control."

Id.  In other words, Commerce found that the presumption of government control was rebutted

based on Hilltop's submitted information alone – without having to further "demonstrate the

absence of both de jure and de facto government control over export activities." Initiation Notice,

75 Fed. Reg. at 18,155.  This preliminary determination became final when AR5 concluded.  <u>See</u>
<u>Final Results</u>, 76 Fed. Reg. at 51,940-43.

**B.      Commerce on Remand Properly Reversed Hilltop's Separate Rate Eligibility**

After remand, Commerce reversed its prior determination that Hilltop had rebutted the
presumption of government control, as a result of the Ocean King misrepresentation.  <u>See</u>
Remand Results at 2, 14-18, 23-24, 30-31, 36-37, 48-49.  While Hilltop objects to this outcome,
the standard it advocates is satisfied because the material misrepresentation constitutes "specific
evidence that the respondent's separate rate representations are themselves unreliable." D-I
Comments at 18; Section IV, <u>supra</u>.  Hilltop relies on exhibits attached to its Section A Response
to support its being based in Hong Kong and entirely market economy owned.  <u>See</u> D-I
Comments at 20 (citing Section A Response Exs. A-5-6).  However, Commerce determined that
it "cannot rely on <u>any</u> of the information contained in Hilltop's Section A response." Remand
Results at 15 (emphasis added).  Commerce therefore correctly found that "Hilltop has failed to
rebut the presumption that it is part of the {PRC}-wide entity." <u>Id.</u> at 2.  Rather than attempt to
once again rebut the presumption, Hilltop instead declined an opportunity in the remand
proceeding to rehabilitate its credibility, neither providing corrected AR5 information nor
responding to the Sentencing Report.  <u>See</u> Remand Evidence Comment Memo.

Hilltop improperly conflates the requirement that all respondents in an NME review must
rebut the presumption of government control with the ability of those based in market economies
to do so without having to establish an absence <u>de jure</u> and <u>de facto</u> government control.
According to the respondent, "Commerce did not even undertake a separate rate analysis for
Hilltop since the record established that Hilltop was located in Hong Kong and, therefore,
exempt from the NME de jure and de facto separate rate test." D-I Comments at 8 n.5.  Yet
Hilltop was always subject to the presumption of government control, as its review request and

separate rate information attest. See Hilltop Review Request at 1-2; Section A Response at 2-15,

Exs. A-2-8.  Commerce expressly relied on Hilltop's Section A Response representations to find

that the respondent rebutted the presumption of government control such that it was eligible for a

rate separate from the PRC-wide entity. See Preliminary Results, 76 Fed. Reg. at 8341 (citing

Section A Response at 1).

       Hilltop's Hong Kong location did not exempt it from having to rebut the presumption of

government control. See Initiation Notice, 75 Fed. Reg. at 18,154-55, 18,158.  Its Section A

representation and exhibits, initially accepted as making Hilltop eligible for a separate rate, were

on remand deemed "fatally undermined and unusable for any purposes" on account of the Ocean

King misrepresentation. Remand Results at 30.  Hilltop emphasizes Commerce having reviewed

documents while conducting verification "in late 2006 . . . in Hilltop's office." D-I Comments at

23 (citing Yelin Verification Memo at 5).  This occurrence instead supports the Commerce

rejection of Hilltop's submitted information because, at that time, Mr. To specifically deceived

Commerce officials as to the existence of a Cambodian affiliate. See Yelin Verification Memo at

2, App. 2.  The fact that the verification took place in Hong Kong does not salvage Hilltop's

credibility such that Commerce was precluded from applying total AFA.

       This Court in Changbao recognized that total AFA in the form of the NME-wide rate is

appropriate where all submissions lack credibility because the respondent "failed to disclose

misrepresentations to Commerce, and had concealed from Commerce the existence of" relevant

information. Changbao, 884 F. Supp. 2d at 1308.  During the investigation of OCTGs from

China, there was a "discovery that Changbao had willfully deceived Commerce." Id. at 1299.

Commerce was found to have properly assigned the 99.14% PRC-wide rate to Changbao through

application of total AFA. See id. at 1307-13.  Defendant-Intervenors attempt to distinguish

<u>Changbao</u> by claiming that "Hilltop was not required to demonstrate independence from government control because it is a Hong Kong based exporter." D-I Comments at 19. However, Hilltop was obligated to rebut the presumption of government control – having requested a review on behalf of "Chinese producers and exporters" – and did so initially through information subsequently found unreliable based on the Ocean King misrepresentation. Hilltop Review Request at 1; <u>see</u> <u>Initiation Notice</u>, 75 Fed. Reg. at 18,154-55, 18,158; Section A Response at 2-15, Exs. A-2-8; <u>Preliminary Results</u>, 76 Fed. Reg. at 8341; Remand Results at 14-24, 33-38.

The <u>Changbao</u> outcome does not hinge on that respondent having been located in China as opposed to Hong Kong, as Hilltop argues. <u>See</u> D-I Comments at 19-20. Rather, the precedent confirms that an NME-wide rate may be applied where a respondent cannot rebut the presumption of government control as a result of material misrepresentation. <u>See</u> <u>Changbao</u>, 884 F. Supp. 2d at 1302-13. Hilltop claims that <u>Changbao</u> is inapposite because of "independent support for the finding that Hilltop is a Hong Kong based exporter." D-I Comments at 20. This effort to distinguish <u>Changbao</u> fails because Hilltop's "support" is documentation attached to the Section A Response that was invalidated based on the Ocean King misrepresentation. <u>Id.</u> at 20 & n.29 (citing Section A Response Exs. A-5-6).[6] Having refused to answer Commerce's questions as to the record evincing other apparently undisclosed corporate entities, Hilltop cannot now dictate that the agency honor its Hong Kong representations. <u>See</u> Remand Results at 44-48;

---

[6]     Hilltop claims that Commerce had to accept this information through 19 U.S.C. § 1677m. <u>See</u> D-I Comments at 2, 23-24. This statute allows an opportunity to cure deficient responses in certain instances, but does not prevent AFA where – as here – the "respondent withheld requested information and significantly impeded the administrative review proceeding by providing unsatisfactory responses to the Department's requests for information." <u>Gerber Food (Yunnan) Co. v. United States</u>, 31 CIT 921, 927, 930, 491 F. Supp. 2d 1326 (2007) ("If the court were to so construe these related provisions, a participant in the administrative review would incur no adverse consequences for withholding requested information . . . or for significantly impeding the review . . . , and thereby failing to act to the best of its ability in providing the information requested. The plain meaning of §§ 1677e and 1677m is to the contrary.")

Cardile Testimony at 17:16-17.  With the evidence rendering Hilltop's submissions unreliable,

application of total AFA in AR5 aligns with that applied to Changbao and upheld by this Court.

Sections III.A, B, IV.A, <u>supra</u>; <u>see</u> <u>Changbao</u>, 884 F. Supp. 2d at 1309-13.  Commerce therefore

properly assigned total AFA despite Hilltop's claimed status as a Hong Kong exporter:

> Although Hilltop claims that it is a Hong Kong-based exporter and therefore placement in the PRC-wide Entity is inappropriate, the undisclosed affiliation and unreliability of information on the record prevent us from determining with certainty the ownership and/or control of Hilltop.  <u>Because of the lack of reliable information relating to affiliation and Hilltop's previously granted separate rate, we cannot conclude that its purported location indicates that it is not controlled by the PRC government.</u> . . .  The rate being applied to Hilltop, as part of the PRC-wide entity, is the proper rate for companies that have failed to qualify for a separate rate, in this case <u>based on fatal deficiencies in Hilltop's Section A responses and the overall unreliability of Hilltop's reported data.</u>

Remand Results at 36-37 (footnote omitted) (emphases added).

The propriety of Commerce applying the NME-wide rate to Hilltop is confirmed by a

recent CAFC ruling on this precise issue in an administrative review of the AD order on

laminated woven sacks from the PRC. <u>See</u> <u>AMS Assocs., Inc. v. United States</u>, 2013 U.S. App.

LEXIS 12853 (Fed. Cir. June 24, 2013).  Although the respondent Zibo Aifudi Plastic Packaging

Co., Ltd. ("Aifudi") was preliminarily assigned a rate separate from the PRC-wide entity based

on the information that it submitted, Commerce thereafter assigned the 91.73% PRC-wide rate as

AFA because the respondent ceased participating in the review. <u>See</u> <u>id.</u> at *4-7.  The CAFC

affirmed; "Because Commerce could properly apply the default country-wide rate after

concluding that, with critical information missing or unverifiable, Aifudi could not carry its

burden to justify a separate rate . . . ." <u>Id.</u> at *14.  <u>AMS</u> validates the Remand Results by

endorsing both the presumption of government control in NME AD proceedings and the ability

of Commerce to reverse such determinations when respondents fail to cooperate. <u>See</u> <u>id.</u> at *8-

14; <u>Changbao</u>, 884 F. Supp. 2d at 1311-12 & n.21.  Moreover, <u>AMS</u> specifically refutes

Hilltop's contention that Commerce must rely on its Hong Kong representations. <u>See</u> D-I

Comments at 20.  Aifudi similarly argued that Commerce must continue to rely on record

information that supported its separate rate status, but – using language fatal to Hilltop in AR5 –

the CAFC ruled that the agency is not required to honor evidence when confronted with conduct

that renders the information necessary to rebut the presumption of government control unusable

and unverifiable:

> In these circumstances, there is no evidentiary or legal error in Commerce's
> decision "to disregard the public information" that Aifudi had submitted . . . .
> {H}ere the absence of verifiable information that would be necessary for Aifudi
> to carry its burden made any other Aifudi-submitted information immaterial to the
> point in dispute.  At least <u>in these circumstances, Commerce committed no legal
> error in disregarding all of Aifudi's remaining information</u>.

<u>AMS</u>, 2013 U.S. App. LEXIS 12853, *12-13 (citation omitted) (emphasis added).

## VI.      COMMERCE PROPERLY ASSIGNED HILLTOP THE 112.81% AD MARGIN

Commerce was not obligated to corroborate the 112.81% PRC-wide AD margin as to the

experience of Hilltop or any respondent granted a separate rate. Section VI.A, <u>infra</u>.  This PRC-

wide rate was corroborated in the investigation and Hilltop offers only speculation in its attempt

to discredit that AD margin, neglecting to carry its burden to rebut the rate's presumptive validity

through a demonstration of record evidence. Section VI.B, <u>infra</u>.

### A.  The 112.81% PRC-Wide Rate Need Not Be Corroborated as to Hilltop

The AFA statute requires that when Commerce relies on "secondary information," it

"shall, <u>to the extent practicable</u>, corroborate that information from independent sources that are

reasonably at their disposal." 19 U.S.C. § 1677e(c) (emphasis added).  The 112.81% PRC-wide

AD margin was "the highest rate calculated in the <u>Initiation Notice</u> of the investigation from

information provided in the petition," a source identified by statute as secondary information. <u>Id.</u>

§ 1677e(b)(1); <u>LTFV Preliminary Results</u>, 69 Fed. Reg. at 42,662.  Hilltop claims that

Commerce neglected its statutory obligation to corroborate the 112.81% PRC-wide rate. See D-I

Comments at 29-36. In its argument, Hilltop emphasizes the margins assigned to it throughout

the AD order life-cycle. See id. at 35-36.[7] Yet Hilltop acknowledges that "Commerce may not be

required to corroborate the 112.81% rate with respect to Hilltop's individual experience." Id. at

25. The law is settled on this point:

> As Commerce has consistently applied it, the presumption of government control
> entails a second presumption that a single countrywide antidumping duty rate is
> appropriate for all respondents subject to the AD duty order - i.e., that most
> companies in NME-designated countries like China do not engage in independent
> pricing behavior at all. . . . This is why the court has accepted, as a logical
> consequence of the presumption, Commerce's application of a countrywide rate
> to a respondent for whom that rate had not been individually corroborated.
> Simply put, "Commerce's permissible determination that {a respondent} is part of
> the PRC-wide entity means that inquiring into {that respondent}'s separate sales
> behavior ceases to be meaningful."

Changbao, 884 F. Supp. 2d at 1311 (citing Transcom, Inc. v. United States, 294 F.3d 1371, 1373,

1381-82 (Fed. Cir. 2002); quoting Watanabe Gr. v. United States, 2010 Ct. Intl. Trade LEXIS

144, *14 (Dec. 22, 2010) (footnote omitted) (emphases added)).

The AD margins previously assigned to Hilltop are irrelevant because "there is no

requirement that the PRC-wide rate entity rate based on AFA relate specifically to the individual

company." Peer Bearing Co. - Changshan v. United States, 32 CIT 1307, 1313, 587 F. Supp. 2d

1319 (2008). Hilltop further emphasizes the rates assigned to other respondents during the AD

order life-cycle. See D-I Comments at 35-36. This comparison is likewise flawed because "the

rate must be corroborated according to its reliability and relevance to the countrywide entity as a

---

[7]     In other words, Hilltop cites to its AD margins calculated in reviews where it appears to
have concealed shipments of subject merchandise through transshipment as support for its effort
to invalidate the assigned AFA rate in AR5. See D-I Comments at 35-36. This position defies
logic. Having refused to provide information as to whether Commerce's prior reviews were
subverted by fraud, Hilltop cannot now present arguments based on the legitimacy of those
reviews. See 6th Supp. Response at 1-22; 7th Supp. Response at 1.

whole." <u>Peer Bearing</u>, 32 CIT at 1313.  According to Hilltop, the separate rates assigned to

respondents since the investigation reveal that "a rate of 112.81% bears no relationship to

commercial reality of the Chinese shrimp industry as a whole." D-I Comments at 35.  Hilltop

misplaces reliance on CAFC precedent in a market economy review where a respondent who

failed to respond to a Commerce questionnaire was improperly assigned an AFA rate that lacked

"some grounding in commercial reality." <u>Id.</u> at 26, 27, 35 (quoting <u>Gallant Ocean (Thail.) Co. v.</u>

<u>United States</u>, 602 F.3d 1319, 1323-24 (Fed. Cir. 2010)).  This Court in <u>Watanabe</u> distinguished

such non-NME precedent in the NME context: "<u>Gallant</u> does not apply in the manner asserted by

Watanabe because Commerce has determined Watanabe to be part of the PRC-wide entity and

therefore Watanabe has not received a separate AFA rate." <u>Watanabe</u>, 2010 Ct. Intl. Trade

LEXIS 144, *15.  <u>Watanabe</u> specifically rejected the position now advanced by Hilltop by

explaining that:

> . . . it is the PRC-wide entity that initially receives the AFA rate for its failure to
> respond and where a respondent has been determined to be part of the PRC-wide
> entity the individual respondent receives that rate either because it accepts that
> such a rate applies or it <u>does not successfully establish its separateness</u>.
> Therefore, the underlying principle of <u>Gallant</u> applies insofar as it <u>requires the</u>
> <u>AFA rate to be a reasonably accurate estimate of the PRC-wide entity's actual</u>
> <u>rate</u>.

<u>Id.</u> n.9 (emphases added).

Hilltop conflates whether the 112.81% rate reflects the AD margins previously assigned

to it and other separate rate respondents with the distinct inquiry as to the PRC-wide entity.

Notably, Hilltop misplaces reliance on this Court having remanded Commerce's assignment of

the 216.01% AFA rate to Orient International Holding Shanghai Foreign Trade Co., Ltd.

("Orient"), a respondent who ceased participating in an administrative review of the AD order on

wooden bedroom furniture from China. <u>See</u> D-I Comments at 27-28 (citing <u>Lifestyle Enter., Inc.</u>

<u>v. United States</u>, 768 F. Supp. 2d 1286 (CIT 2011)).  In <u>Lifestyle</u>, "the court rejected

Commerce's assignment of a 216.01% rate . . . because it bore no commercial reality to the rates

assigned to industry participants as a whole." Id. at 28; see Lifestyle, 768 F. Supp. 2d at 1293-98.

However, Hilltop omits the critical fact that "Commerce did not assign Orient the PRC-wide

rate, but rather the rate from a cooperating company corroborated with data from the current

period of review . . . .  Commerce did not assign the PRC-wide rate per se, but rather selected the

same rate based on separate considerations." Lifestyle, 768 F. Supp. 2d at 1298 n.12 (citation

omitted) (emphases added).  Indeed, the petitioner in that case unsuccessfully challenged

Orient's separate rate status given the record support for Commerce's unchanged conclusion that

"Orient had effectively demonstrated de jure and de facto independence from the government."

Id. at 1297.

      Lifestyle is therefore inapposite to where Commerce assigns an NME-wide rate as AFA

based on the invalidation of separate rate information, as it did for Hilltop in AR5. See id.;

Remand Results at 23-24, 30-31, 36-37, 49.  That case, resolved with Orient assigned an 83.55%

AFA rate, applies only to non-cooperative respondents in NME proceedings that are assigned

AFA rates separate from the NME-wide entity. See Lifestyle Enter., Inc. v. United States, 896 F.

Supp. 2d 1297, 1302 (CIT 2013).  When the AFA rate is applied as the NME-wide rate,

Commerce is not required to "select a rate that is commercially reasonable based upon the

overall experience of respondents in the case." D-I Comments at 29.  It does not matter that the

112.81% PRC-wide rate is a "departure from . . . all industry participants throughout the history

of this case" or "higher than the highest rate ever given to a respondent." Id. at 34, 36.  Rather,

the precedent of this Court confirms that the relevant inquiry is whether this rate is "a reasonably

accurate estimate of the PRC-wide entity's actual rate." Watanabe, 2010 Ct. Intl. Trade LEXIS

144, *15 n.9.  With Commerce assigning the PRC-wide rate as AFA, the "sales behavior" of

Hilltop in earlier reviews and other respondents found separate from the PRC-wide entity "ceases to be meaningful." Id. at *14; Changbao, 884 F. Supp. 2d at 1311.

### B. The 112.81% PRC-Wide Rate Was Properly Corroborated

In assigning the 112.81% AD margin to Hilltop, Commerce explained that "the PRC-wide rate was fully corroborated during the investigation." Remand Results at 38. As part of that investigation, Commerce conducted an analysis of record evidence and "found that the margin of 112.81 percent has probative value." LTFV Preliminary Results, 69 Fed. Reg. at 42,662 (citing U.S. Department of Commerce Memorandum from A. Villanueva to File (July 2, 2004) ("Corroboration Memo")). "Specifically, the Department examined the official U.S. import statistics, net of international freight, insurance and import charges, used by Petitioner to determine export price and made adjustments to Petitioner's calculation of normal value to ensure the probative value of the margins alleged in the Petition." Remand Results at 38. Commerce therefore complied with its regulatory obligation by confirming that the 112.81% rate "has probative value." 19 C.F.R. § 351.308(d). This agency effort satisfies the qualified statutory directive that Commerce, "to the extent practicable, corroborate information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e.

While relied upon by Hilltop, Shandong Machinery Import & Export Co. v. United States underscores the propriety of Commerce assigning the 112.81% AD margin. See D-I Comments at 29. In Shandong, this Court recognized Commerce's limited ability to corroborate NME-wide rates: "Unlike rates that are calculated using responses to questionnaires, Commerce cannot calculate an AFA rate for the PRC as a whole, because there are no questionnaire responses from the PRC itself on which to rely." Shandong, 2009 Ct. Intl. Trade LEXIS 76, *16-17 (June 24, 2009). Finding that "Commerce has satisfied its corroboration requirement," the 139.31% PRC-wide rate for bars/wedges and the 189.37% PRC-wide rate for axes/adzes were both affirmed. Id.

at *20.  Remand was ordered on the 45.92% PRC-wide rate for hammers/sledges because that rate "was not corroborated. . . .  Commerce took no steps to corroborate the information during the LTFV investigation." Id. at *23-24.  Given the steps that Commerce took to corroborate the 112.81% PRC-wide rate during the investigation, that rate should be affirmed as were the 139.31% and 189.37 PRC-wide rates in Shandong. See LTFV Preliminary Results, 69 Fed. Reg. at 42,662; Remand Results at 38.

Hilltop has not rebutted the presumption of validity attaching to the previously corroborated 112.81% PRC-wide rate.  The CAFC recognizes that Commerce is entitled to rely "on the presumption that the rate" based on the petition and corroborated during the investigation is "still valid." KYD, 607 F.3d at 767.  In KYD, Commerce's assignment of a 122.88% AFA rate was upheld because the respondent "offered no evidence . . . that would rebut that presumption." Id.  Hilltop notes this adverse precedent but incorrectly asserts that the presumption only attaches to AFA rates affirmed by reviewing courts. See D-I Comments at 36 n.47.  While the 122.88% AFA rate in KYD had previously withstood review by this Court, the CAFC recitation of the presumption requires only that "Commerce had a sufficient basis for concluding that the AFA rate . . . was reliable." KYD, 607 F.3d at 766.  With such a "sufficient basis" supporting the 112.81% PRC-wide rate, it was incumbent upon Hilltop to rebut the presumption of validity through an affirmative demonstration that the rate did not reflect "a reasonably accurate estimate of the PRC-wide entity's actual rate." Id.; Watanabe, 2010 Ct. Intl. Trade LEXIS 144, *15 n.9; see LTFV Preliminary Results, 69 Fed. Reg. at 42,662; Remand Results at 38.

Hilltop's effort to discredit the 112.81% PRC-wide rate does not rebut the presumptive validity of that AD margin.  Hilltop faults Commerce for not placing the Corroboration Memo on the record. See D-I Comments at 31.  Yet Hilltop failed to ask Commerce to do so while

challenging corroboration when the AR5 record was reopened. <u>See</u> Hilltop's Comments on Draft
Remand Results Redetermination (Mar. 1, 2013), R.D. 44, at 7-8.  Indeed, Hilltop could have
placed the public version of the Corroboration Memo on the AR5 record itself, but declined to
submit any information in response to specific authorization from Commerce. <u>See</u> Remand
Evidence Comment Memo.  Having not availed itself of these opportunities to place the
Corroboration Memo on the AR5 record, Hilltop cannot rebut the presumptive validity of the
112.81% PRC-wide rate by speculating that the Corroboration Memo supports its position.  Once
again, "the burden of creating an adequate record lies with {interested parties} and not with
Commerce." <u>Maclean-Fogg</u>, 836 F. Supp. 2d at 1376 (quoting <u>QVD Food</u>, 658 F.3d at 1324).

 Hilltop likewise neglects its record responsibilities in seeking support from this Court's
having reduced the AD margins assigned to separate rate respondents in the investigation. <u>See</u>
D-I Comments at 32-33 (citing <u>Allied Pac. Food (Dalian) Co. v. United States</u>, 716 F. Supp. 2d
1339, 1342 (CIT 2010); <u>Shantou Red Garden Foodstuff Co. v. United States</u>, 880 F. Supp. 2d
1332, 1334 (CIT 2012)).  Without any demonstration that these margin reductions impacted the
corroboration analysis, Hilltop has not rebutted the presumptive validity of the 112.81% PRC-
wide rate. <u>See KYD</u>, 607 F.3d at 766-67.  Hilltop reveals the speculative nature of its claim by
asserting that the agency analysis would be insufficient "<u>{i}f</u> the Department's corroboration
was based on margins that now have been invalidated." D-I Comments at 33 (emphasis added).
Such conjecture by Hilltop does not establish that the changed investigation AD margins
discredit Commerce's corroboration of the PRC-wide rate. <u>See id.</u>  Finally, Hilltop misplaces
reliance on the CAFC holding "that it is improper for Commerce to use . . . an antidumping duty
rate that has been vacated as erroneous." D-I Comments at 33 (quoting <u>D & L Supply Co. v.</u>
<u>United States</u>, 113 F.3d 1220, 1224 (Fed. Cir. 1997)).  While this Court reduced the AD margins

assigned to separate rate respondents in the investigation, the 112.81% PRC-wide rate was unaffected and remains intact. See Allied Pac. 716 F. Supp. 2d at 1339-52; Shantou, 880 F. Supp. 2d at 1332-35.

Hilltop's response to the corroboration analysis is indicative of its greater interaction with Commerce.  When confronted with unfavorable facts, Hilltop waits until the record is closed and attacks Commerce for not doing enough, rather than timely explaining its position with evidentiary support.  Hilltop forwent its opportunity to rebut the presumption that the 112.81% PRC-wide rate remained adequately corroborated, just as it failed to explain the Ocean Duke misrepresentation and the transshipment evidence when asked to do so by Commerce. See 6th Supp. Response at 1-22; 7th Supp. Response at 1.  Such behavior is fatal to Hilltop's position; the administrative process requires interested parties to create records in support of their position, as opposed to thwarting agency inquiries and afterwards challenging the findings made in the absence of cooperation. See Maclean-Fogg, 836 F. Supp. 2d at 1376; QVD Food, 658 F.3d at 1324.  Assigning Hilltop the 112.81% PRC-wide rate in AR5 was an appropriate exercise of Commerce's "'particularly great' discretion in applying an AFA margin to an uncooperative respondent" given that AFA functions as a "deterrent to non-cooperation." KYD, 607 F.3d at 765 (quoting PAM S.p.A, 582 F.3d at 1340); F.lli De Cecco, 216 F.3d at 1032.

## VII.    CONCLUSION

For these reasons, AHSTAC respectfully requests that the Court affirm Commerce's Remand Results.

Respectfully submitted,

\_\_\_\_/s/ Jordan Charles Kahn\_\_\_\_
Andrew W. Kentz
Jordan Charles Kahn
Nathaniel Maandig Rickard
Nathan W. Cunningham

**PICARD KENTZ & ROWE LLP**
1750 K St., N.W.
Suite 1200
Washington, DC 20006

*Counsel to Plaintiff Ad Hoc Shrimp*
*Trade Action Committee*

Dated:  June 24, 2013

## PUBLIC CERTIFICATE OF SERVICE

## AD HOC SHRIMP TRADE ACTION COMMITTEE V. UNITED STATES COURT NO. 11-00335

I, Jordan C. Kahn, hereby certify that a copy of the foregoing submission was served on this 24th day of June 2013, by electronic service through the Court's CM/ECF system on the following parties:

**On Behalf of the United States:**

Joshua E. Kurland
**U.S. DEPARTMENT OF JUSTICE**
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**On behalf of Hilltop International and Ocean Duke Corp.**

Mark E. Pardo
**GRUNFELD DESIDERIO LEBOWITZ SILVERMAN & KLESTADT, LLP**
1201 New York Avenue, NW
Suite 650
Washington, DC 20005

    __/s/ Jordan C. Kahn_____
    Jordan C. Kahn
    **PICARD KENTZ & ROWE LLP**
    *Counsel to Plaintiff Ad Hoc*
    *Shrimp Trade Action Committee*