Slip Op. 13 - 93

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Plaintiff, | |
| v. | Before: Donald C. Pogue, Chief Judge |
| UNITED STATES, | |
| Defendant, | Court No. 11-00335 |
| and | |
| HILLTOP INTERNATIONAL and OCEAN DUKE CORP., | |
| Defendant-Intervenors. | |

OPINION

[final results of redetermination on remand affirmed in part and remanded in part]

Dated: July 23, 2013

Andrew W. Kentz, Jordan C. Kahn, Nathaniel Maandig Rickard and Nathan W. Cunningham, Picard Kentz & Rowe LLP, of Washington, DC, for the Plaintiff.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  With him on the brief were Stuart Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Melissa M. Brewer, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Mark E. Pardo and Andrew T. Schutz, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for the Defendant-Intervenors.

**Pogue, Chief Judge:**  This action arises from the fifth administrative review of the antidumping duty order covering certain frozen warmwater shrimp from the People's Republic of China ("China" or the "PRC").[1]  In prior proceedings, the court remanded certain aspects of the agency decision in this review for further consideration.[2]  While remand was pending, the United States Department of Commerce ("Commerce"), by motion, sought permission to reopen the administrative record to consider new evidence suggesting that the antidumping duty assessment rate calculated in this review for respondent Hilltop International ("Hilltop") – a Defendant-Intervenor in this action – may have been based on information that was false or incomplete.[3]  Because Commerce's request to expand the scope of remand was based on a substantial and legitimate concern, the motion was granted.[4]

---

[1] See Certain Frozen Warmwater Shrimp from the People's Republic of China, 76 Fed. Reg. 51,940 (Dep't Commerce Aug. 19, 2011) (final results and partial rescission of antidumping duty administrative review) ("Final Results") and accompanying Issues & Decision Mem., A-570-893, ARP 09-10 (Aug. 12, 2011).

[2] Ad Hoc Shrimp Trade Action Comm. v. United States, __ CIT __, 882 F. Supp. 2d 1366 (2012).

[3] Ad Hoc Shrimp Trade Action Comm. v. United States, __ CIT __, 882 F. Supp. 2d 1377, 1379 (2013).

[4] Id. at 1381-82 (relying on SKF USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001); Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 29 CIT 1516, 1522-26, 412 F. Supp. 2d 1330, 1336-39 (2005)).

Upon consideration of the new evidence, Commerce concluded that Hilltop had significantly impeded this proceeding by submitting information containing material misrepresentations and inaccuracies.[5]  Moreover, Commerce determined that the nature of Hilltop's misrepresentations and the circumstances of their eventual disclosure "call[ed] into question Hilltop's ownership structure as reported in [this review], and, consequently, its eligibility for a separate rate [from the PRC-wide entity]."[6] Accordingly, because the record contained no reliable evidence to rebut the presumption of government control attaching to Hilltop as an exporter of subject merchandise from China,[7] Commerce determined that Hilltop failed to demonstrate eligibility for a rate separate from the PRC-wide entity, and therefore assigned to Hilltop the antidumping duty assessment

---

[5] Final Results of Redetermination Pursuant to Court Remand, A-570-893, ARP 09-10 (Apr. 1, 2013), ECF No. 74 ("Remand Results") at 17.

[6] Id. at 24.

[7] See Transcom, Inc. v. United States, 294 F.3d 1371, 1373 (Fed. Cir. 2002) (explaining that Commerce treats exporters "from countries with nonmarket economies ('NMEs') such as China" as "subject to a single, countrywide antidumping duty rate unless they [can] demonstrate legal, financial, and economic independence from the Chinese government," and noting that the Court of Appeals for the Federal Circuit has "upheld the application of this 'NME presumption'") (citing Sigma Corp. v. United States, 117 F.3d 1401 (Fed. Cir. 1997)).

rate applied to that countrywide entity.[8]  Hilltop now challenges

Commerce's redetermination on remand as not supported by

substantial evidence.[9]

The court has jurisdiction pursuant to Section

516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended,

19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[10] and 28 U.S.C. § 1581(c)

(2006).

For the reasons set forth below, Commerce's

determination to apply the PRC-wide antidumping duty assessment

rate to Hilltop is sustained.  However, Commerce's choice of an

appropriate assessment rate for the PRC-wide entity (including

Hilltop) is remanded for further consideration and/or additional

explanation concerning the chosen rate's compliance with the

antidumping statute's corroboration requirement.[11]

## BACKGROUND

On remand, Commerce accepted into the record of this

(fifth) review evidence submitted by Plaintiff Ad Hoc Shrimp

---

[8] Remand Results at 15.

[9] See Def.-Intervenors' Comments in Opp'n to Final Remand
Results, ECF No. 76 ("Hilltop's Br.").

[10] Further citations to the Tariff Act of 1930, as amended, are
to the relevant provisions of Title 19 of the U.S. Code,
2006 edition.

[11] See 19 U.S.C. § 1677e(c).

Trade Action Committee ("AHSTAC") – a petitioner for the

underlying antidumping duty order – in the course of the

subsequent (sixth) review of the order.[12]  This new evidence

showed that, contrary to Hilltop's representations in this

review, Hilltop was affiliated with an undisclosed Cambodian

shrimp exporter during the relevant time period.[13]  Commerce

---

[12] Remand Results at 2, 5 (citing Placing Public Documents on the
Record of the Fifth Administrative Review, A-570-893, ARP 09-10
(Feb. 14, 2013), Remand Admin. R. Pub. Docs. 1-38 ("Docs. from
AR6"), [AHSTAC's] Comments on the Dep't's Preliminary
Determination to Grant Hilltop's Request for Company-Specific
Revocation Pursuant to 19 C.F.R. 351.222(b)(2) & Comments in
Anticipation of Hilltop's Forthcoming Verification, A-570-893,
ARP 10-11 (Mar. 12, 2012), reproduced in Hilltop's Br. con.
app., ECF No. 79-1, at ex. 6).  All relevant portions of the
administrative record relied on in this opinion are reproduced
within the public and confidential appendices to the parties'
court filings, ECF Nos. 79-80, 94-95.  Hereinafter, all
citations to documents from the sixth review that have been
placed on the record of this (fifth) review include the label
Docs. from AR6.

[13] Compare Resp. of Hilltop Int'l & Affiliates to Antidumping
Questionnaire Section A, A-570-893, ARP 10-11 (June 15, 2010),
Admin. R. Con. Doc. 6 [Pub. Doc. 36], reproduced in Def.'s Resp.
Comments Regarding Remand Results ("Def.'s Resp.") con. app.,
ECF No. 94-5, at tab 19 ("Hilltop's AR5 Sec. A Resp.") at 4-5
(representing that Exhibits A-2 and A-3 to Hilltop's AR5 Section
A Response contain an exhaustive list of Hilltop's
affiliations), and id. at Exs. A-2 & A-3 (making no mention of
Ocean King (Cambodia) Co., Ltd. ("Ocean King")), with Docs. from
AR6, Hilltop's 7th Supp. Questionnaire Resp., A-570-893,
ARP 10-11 (June 27, 2012), reproduced in Def.'s Resp. con. app.
at tab 24 ("Hilltop's AR6 7th Supp. Questionnaire Resp.") at 2
(acknowledging that "an affiliation within the statutory
definition of 19 U.S.C. § 1677(33) existed between the Hilltop
Group and Ocean King until September 28, 2010"). See Final
Results, 76 Fed. Reg. at 51,940 (noting that the period of
(footnote continued)

concluded that the circumstances of Hilltop's eventual admission

to this previously undisclosed affiliation impeached Hilltop's

credibility with regard to its remaining representations in this

review. See Remand Results at 16 ("Because Hilltop submitted

material misrepresentations with regard to its affiliations, and

certified the accuracy of such false information, we find that

we cannot rely on any of the information submitted by Hilltop in

this review."). Specifically, Commerce credited evidence that

Hilltop did not disclose this affiliation until faced with clear

evidence thereof[14]; that Hilltop failed to provide a satisfactory

explanation for its omissions and misrepresentations in

reporting its corporate structure – claiming only that the

misrepresentations "may have been in error . . . for whatever

reason"[15]; and that Hilltop continues to withhold information

---

review for this proceeding was February 1, 2009, through January
31, 2010).

[14] See Docs. from AR6, Hilltop's AR6 7th Supp. Questionnaire
Resp. at 2 (admitting that this affiliation was not disclosed
until Commerce placed on record public registration documents
for Ocean King showing affiliation with Hilltop).

[15] See Remand Results at 19 (quoting Docs. from AR6, Hilltop-
Specific Issues Rebuttal Br., A-570-893, ARP 10-11 (July 23,
2012), reproduced in Def.'s Resp. pub. app., ECF No. 95-4, at
tab 18 ("Hilltop's AR6 Rebuttal Br.") at 9).

that Commerce requested regarding potential additional

undisclosed affiliates.[16]

       Commerce's determination that Hilltop is not a

reliable source of complete and accurate information implicated

Hilltop's representations in this review that neither it nor any

of its PRC affiliates with potential for price manipulation were

under the control of the Chinese government. See Hilltop's AR5

Sec. A Resp. at 3-5; Remand Results at 15.  Because Commerce's

decision to assign to Hilltop a separate rate from the PRC-wide

entity in this review had been based on these representations,[17]

which Commerce now found to be unreliable,[18] the agency

determined that the basis for Hilltop's separate rate status had

been invalidated. Remand Results at 15.  Finding no valid

evidence to rebut the presumption of government control applied

to exporters of subject merchandise from China,[19] Commerce

decided to no longer treat Hilltop as separate from the PRC-wide

entity. Id.  Accordingly, Commerce assigned to Hilltop the

---

[16] See id. at 21 n.83, 23.

[17] Certain Frozen Warmwater Shrimp from the People's Republic of
China, 76 Fed. Reg. 8338, 8340 (Dep't Commerce Feb. 14, 2011)
(preliminary results and preliminary partial rescission of fifth
antidumping duty administrative review) ("Preliminary Results")
(unchanged in the Final Results, 76 Fed. Reg. at 51,942).

[18] Remand Results at 15.

[19] See supra note 7.

112.81 percent antidumping duty assessment rate applied to the
PRC-wide entity in this review. Id. at 2.

        Hilltop challenges Commerce's redetermination on
remand, arguing that it should be assessed an antidumping duty
rate based at least in part on its own information. Hilltop's
Br. at 3-24.  In the alternative, Hilltop challenges the rate
assessed for the PRC-wide entity (including Hilltop) in this
review as not supported by substantial evidence. Id. at 24-37.

**STANDARD OF REVIEW**

        The court will sustain Commerce's redetermination on
remand so long as it is supported by substantial evidence and is
otherwise in accordance with law. See 19 U.S.C.
§ 1516a(b)(1)(B)(i); Pakfood Pub. Co. v. United States,
__ CIT __, 753 F. Supp. 2d 1334, 1341 (2011).  Substantial
evidence refers to "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion," SKF USA, Inc.
v. United States, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting
Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (defining
"substantial evidence")), and the substantial evidence standard
of review can be roughly translated to mean "is the
determination unreasonable?" Nippon Steel Corp. v. United
States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (internal quotation
and alteration marks and citation omitted).

## DISCUSSION

A. Commerce's Decision to Deny Hilltop Separate Rate Status
   in This Review Is Sustained.

The first question before the court is whether
Commerce's decision to deny Hilltop separate rate status in this
review is supported by substantial evidence. See Remand Results
at 2 (finding that "Hilltop has failed to rebut the presumption
that it is part of the [PRC]-wide entity"); Hilltop Br. at 18-24
(arguing that Commerce's decision to treat Hilltop as part of
the PRC-wide entity is not supported by substantial evidence).
For the reasons below, Commerce's decision to apply the PRC-wide
antidumping duty assessment rate to Hilltop is supported by
substantial evidence and is therefore sustained.

When dealing with merchandise from China, which
Commerce treats as a nonmarket economy ("NME"),[20] Commerce

---

[20] A "nonmarket economy" is defined as "any foreign country that
[Commerce] determines does not operate on market principles
of cost or pricing structures, so that sales of merchandise in such
country do not reflect the fair value of the merchandise."
19 U.S.C. § 1677(18)(A).   "Because it deems China to be a
nonmarket economy country, Commerce generally considers
information on sales in China and financial information obtained
from Chinese producers to be unreliable for determining, under
19 U.S.C. § 1677b(a), the normal value of the subject
merchandise." Shanghai Foreign Trade Enters. Co. v. United
States, 28 CIT 480, 481, 318 F. Supp. 2d 1339, 1341 (2004).
See also 19 U.S.C. § 1677b(c) (providing special rules governing
Commerce's calculation of normal value for merchandise from
nonmarket economy countries); Preliminary Results, 76 Fed. Reg.
at 8340 ("In every case conducted by [Commerce] involving the
PRC, the PRC has been treated as an NME country.   In accordance
                                          (footnote continued)

"presumes that all companies within [China] are subject to
governmental control and should be assigned a single antidumping
duty rate unless an exporter demonstrates the absence of both *de
jure* and *de facto* governmental control over its export
activities" and thus obtains "separate rate status".[21]  Where

---

with [19 U.S.C. § 1677(18)(C)(i)], any determination that a
foreign country is an NME country shall remain in effect until
revoked by [Commerce].  None of the parties to this proceeding
has contested such treatment.  Accordingly, we calculated
[normal value] in accordance with [19 U.S.C. § 1677b(c)], which
applies to NME countries.") (additional citation omitted)
(unchanged in the <u>Final Results</u> or <u>Remand Results</u>).

[21] Import Administration, U.S. Dep't Commerce, <u>Separate-Rates
Practice & Application of Combination Rates in Antidumping
Investigations Involving Non-Market Economy Countries</u>, Policy
Bulletin No. 05.1 (Apr. 5, 2005) ("<u>ITA Policy Bulletin 05.1</u>")
at 1 (citation omitted); <u>Preliminary Results</u>, 76 Fed. Reg. at
8340.  Generally, Commerce evaluates "whether a firm is
sufficiently independent from governmental control in its export
activities to be eligible for separate rate status" on the basis
of three criteria for demonstrating the absence of *de jure*
government control and four criteria for demonstrating the
absence of *de facto* government control. <u>ITA Policy Bulletin 05.1</u>
at 2.  The *de jure* freedom from government control criteria are
"1) an absence of restrictive stipulations associated with an
individual exporter's business and export licenses; 2) any
legislative enactments decentralizing control of companies; and
3) any other formal measures by the government decentralizing
control of companies." <u>Id.</u>  The *de facto* freedom from government
control criteria are "1) whether the export prices are set by,
or subject to the approval of, a governmental authority;
2) whether the respondent has authority to negotiate and sign
contracts and other agreements; 3) whether the respondent has
autonomy from the central, provincial and local governments in
making decisions regarding the selection of its management; and
4) whether the respondent retains the proceeds of its export
sales and makes independent decisions regarding disposition of
profits or financing of losses." <u>Id.</u>

record evidence supports a respondent's eligibility for separate rate status, Commerce must treat the respondent as separate from the countrywide entity unless the agency makes a specific finding, supported by substantial evidence, that the evidence regarding separate rate eligibility is deficient or otherwise unreliable. See Jiangsu Changbao Steel Tube Co. v. United States, __ CIT __, 884 F. Supp. 2d 1295, 1309-10 (2012).[22]

Hilltop's separate rate status in this review was based on representations contained in its responses to Commerce's information requests. Preliminary Results, 76 Fed. Reg. at 8340-41 (unchanged in the Final Results, 76 Fed. Reg. at 51,942).  Because Hilltop "reported that it is a Hong Kong based exporter of subject merchandise," Commerce concluded that "a separate rate analysis [was] not necessary to determine whether [Hilltop] is independent from government control." Id. at 8341 (citations omitted).[23]  Although Hilltop

---

[22] (discussing Gerber Food (Yunnan) Co. v. United States, 29 CIT 753, 387 F. Supp. 2d 1270 (2005); Shandong Huarong Gen. Grp. Corp. v. United States, 27 CIT 1568 (2003) (not reported in the Federal Supplement); Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, No. 10-00059, 2011 WL 4829947 (CIT Oct. 12, 2011); Since Hardware (Guangzhou) Co. v. United States, No. 09-00123, 2010 WL 3982277 (CIT Sept. 27, 2010)).

[23] See id. at 8340 ("[I]f [Commerce] determines that a company is wholly foreign-owned or located in a market economy, then a separate rate analysis is not necessary to determine whether it is independent from government control.") (citing Petroleum Wax Candles from the People's Republic of China, 72 Fed. Reg.
(footnote continued)

had disclosed a number of affiliations with companies located in

China that were at least partially owned by Chinese persons or

entities, it represented that "[t]here is no control over any of

the Hilltop Group companies by any local or national government

entity." Hilltop's AR5 Sec. A Resp. at 3-4.  Based on this

information, Commerce determined that "there is no PRC ownership

of Hilltop" and, notwithstanding Hilltop's affiliation with

Chinese companies, the record presented "no evidence indicating

that [any] of these companies are under the control of the PRC."

Preliminary Results, 76 Fed. Reg. at 8341 (unchanged in the

Final Results, 76 Fed. Reg. at 51,942).

       As discussed above, however, on remand Commerce

determined that Hilltop provided false and incomplete

information in this review regarding its corporate structure

and, given the nature and timing of Hilltop's omissions and

misrepresentations in this regard, Commerce decided that none of

Hilltop's submissions, including the statements used to support

---

52,355, 52,356 (Dep't Commerce Sept. 13, 2007) (final results of
antidumping duty administrative review)); see also, e.g., Wooden
Bedroom Furniture from the People's Republic of China, 69 Fed.
Reg. 35,312, 35,320 (Dep't Commerce June 24, 2004) (notice of
preliminary determination of sales at less than fair value and
postponement of final determination) ("It is [Commerce]'s policy
to treat Hong Kong companies as market-economy companies.")
(citing Application of U.S. Antidumping and Countervailing Duty
Laws to Hong Kong, 62 Fed. Reg. 42,965 (Dep't Commerce Aug. 11,
1997) (explaining that "Hong Kong [is] considered a separate
Customs territory within the PRC" subsequent to the PRC's
resumed exercise of sovereignty over its territory)).

Hilltop's separate rate status, could be relied on to provide accurate information. <u>See</u> <u>Remand Results</u> at 2, 15.  This conclusion "was based on the finding that Hilltop had a Cambodian affiliate, Ocean King, from [the first period of administrative review of this antidumping duty order] through most of [the sixth period of review], which Hilltop repeatedly failed to disclose to [Commerce]." <u>Id.</u> at 6.

Commerce's finding that Hilltop repeatedly withheld and misrepresented material information regarding its affiliation with Ocean King is supported by a reasonable reading of the record here.  Specifically, record evidence shows that, although Hilltop's general manager and part owner was a board member and 35 percent shareholder in Ocean King during the period of review,[24] Hilltop nevertheless misrepresented to Commerce that "[n]one of the Hilltop Group companies or their

---

[24] <u>See</u> <u>Remand Results</u> at 8 ("[Commerce] released public registration documents for Ocean King that identified To Kam Keung, Hilltop's general manager and part owner, as a board member and 35 percent shareholder beginning in July 2005 and ending in September 2010.") (citing <u>Docs. from AR6</u>, <u>Public Registration Docs. for Ocean King (Cambodia) Co., Ltd.</u>, A-570-893, ARP 10-11 (June 19, 2012), <u>reproduced in</u> Def.'s Resp. pub. app. at tab 17); <u>Docs. from AR6</u>, <u>Hilltop's AR6 7th Supp. Questionnaire Resp.</u> at 2 (acknowledging that "an affiliation within the statutory definition of 19 U.S.C. § 1677(33) existed between the Hilltop Group and Ocean King until September 28, 2010"); <u>Final Results</u>, 76 Fed. Reg. at 51,940 (noting that the period of review for this proceeding was February 1, 2009, through January 31, 2010).

individual owners own 5 percent or more in stock in any third

parties,"[25] and that none of Hilltop's managers "held positions

with any other firm, government entity, or industry organization

during the [period of review]."[26]   The evidence also shows that

Hilltop subsequently denied and concealed its affiliation with

and investment in Ocean King until confronted with public

registration documents contradicting its misrepresentations.[27]

This is sufficient to reasonably support Commerce's conclusion

that Hilltop withheld information requested of it in this review

---

[25] See Remand Results at 12 (quoting Ex. A-2 to Hilltop's AR5
Sec. A Resp.).

[26] See id. at 13 n.65 (quoting Hilltop Int'l & Affiliates Supp.
Section A Questionnaire Resp., A-570-893, ARP 09-10
(July 29, 2010), Admin. R. Con. Doc. 12 [Pub. Doc. 58],
reproduced in Def.'s Resp. con. app. at tab 20, at 6).

[27] Compare Docs. from AR6, Hilltop's Resp. to CBP Import Data,
A-570-893, ARP 10-11 (May 24, 2012), reproduced in Def.'s Resp.
con. app. at tab 23, at 2 n.1 (claiming that Hilltop is not
affiliated with any of the Cambodian shrimp manufacturers
identified in Docs. from AR6, Customs Data of U.S. Imports of
Certain Frozen Warmwater Shrimp from Cambodia, A-570-893,
ARP 10-11 (May 17, 2012), reproduced in Def.'s Resp. con. app.
at tab 25, which included Ocean King), and Docs. from AR6,
Hilltop's Reply to Pet'rs' Resp. to CBP Import Data, A-570-893,
ARP 10-11 (May 31, 2012), reproduced in Def.'s Resp. con. app.
at tab 23, at 6 ("Hilltop is not affiliated with Ocean King.
. . . Hilltop confirms that neither the company, nor its owners
or officers, invested any funds in Ocean King."), with Docs.
from AR6, Hilltop's AR6 7th Supp. Questionnaire Resp. at 2
(admitting to Hilltop's affiliation with Ocean King for the
first time in response to Commerce's request to reconcile
Hilltop's prior representations with the public registration
documents for Ocean King).

and significantly impeded this proceeding by submitting

information containing material misrepresentations and

inaccuracies. See Remand Results at 15, 17.

When a respondent fails to comply with Commerce's

requests by withholding or failing to timely provide requested

information, submitting information that cannot be verified, or

otherwise significantly impeding an antidumping proceeding,

Commerce may disregard all or part of the deficient submission

if the respondent fails to timely and adequately remedy or

explain the deficiency after receiving notice from the agency.

19 U.S.C. at §§ 1677e(a)(2), 1677m(d).[28]  Here Commerce

---

[28] Where the deficiency identified in a respondent's submissions
affects an isolated issue or data set, Commerce uses facts
otherwise available solely to fill the evidentiary gap, while
continuing to rely on the remainder of the respondent's non-
deficient submissions. E.g., Am. Silicon Techs. v. United
States, 24 CIT 612, 620 n.6, 110 F. Supp. 2d 992, 999 n.6 (2000)
(citing Statement of Administrative Action accompanying the
Uruguay Round Agreements Act, H.R. Rep. No. 103-826 (1994)
("SAA") at 656, 869).  Where, however, the deficiency affects
information that is "core, not tangential, and there is little
room for substitution of partial facts," Commerce may disregard
the totality of the respondent's submitted information and reach
its determination based on "total facts available." Shanghai
Taoen Int'l Trading Co. v. United States, 29 CIT 189, 199 n.13,
360 F. Supp. 2d 1339, 1348 n.13 (2005).  Where resort to the use
of facts otherwise available is warranted, Commerce may employ
an adverse inference when selecting among the facts available if
it further determines that the respondent failed to cooperate by
not acting to the best of its ability to comply with Commerce's
requests for information. 19 U.S.C. § 1677e(b).  But "[a]lthough
separate determinations are required for application of facts
otherwise available under § 1677e(a), and adverse inferences
under § 1677e(b), both standards are met where a respondent
                                        (footnote continued)

determined that Hilltop's conduct implicated the overall

credibility of its representations in this review.[29]  In

particular, Commerce concluded that the credibility of Hilltop's

statements regarding its affiliations, corporate structure, and

ownership – which had formed the basis for Hilltop's separate

rate status in this review – was undermined by Hilltop's

withholding of critical information and repeated

misrepresentation of the scope of its affiliates. Remand Results

at 14-15.  Specifically, Commerce could no longer rely on

Hilltop's declaration that none of the Chinese companies with

which it is affiliated – all of which possess "a significant

potential for manipulation of [the] price or production [of

subject merchandise]"[30] – was controlled by the PRC.[31]

---

purposefully withholds, and provides misleading, information."
Shanghai Taoen, 29 CIT at 195, 360 F. Supp. 2d at 1345.

[29] See Remand Results at 17; cf. Changbao, __ CIT at __,
884 F. Supp. 2d at 1306 ("It is reasonable for Commerce to infer
that a respondent who admits to having intentionally deceived
Commerce officials, and does so only after Commerce itself
supplies contradictory evidence, exhibits behavior suggestive of
a general willingness and ability to deceive and cover up the
deception until exposure becomes absolutely necessary.");
Shanghai Taoen, 29 CIT at 199 n.13, 360 F. Supp. 2d at 1348 n.13
(explaining that a respondent's intentional deception of
Commerce may reasonably implicate the overall credibility of
that respondent).

[30] Preliminary Results, 76 Fed. Reg. at 8339.

[31] See Hilltop's AR5 Sec. A Resp. at 3-4; Remand Results at 15,
24 ("Hilltop's refusal in AR6 . . . to disclose its full
                                            (footnote continued)

Although Hilltop was afforded an opportunity to
rehabilitate its impeached credibility by providing a reasonable
explanation for its non-disclosure and subsequent denial of any
affiliation with Ocean King, the evidence also supports
Commerce's conclusion that Hilltop's explanation was
unpersuasive.[32]  Far from providing a reasonable explanation,
Hilltop admitted only what was unequivocally evidenced by the
new documents,[33] trivialized its prior misrepresentation as
having been in error "for whatever reason,"[34] and continued to

---

universe of affiliated companies and provide information
regarding its affiliations with other persons/entities calls
into question Hilltop's ownership structure as reported in [this
review], and, consequently, its eligibility for a separate rate
in this review."), 30 ("[B]ecause the disclosure of Hilltop's
affiliation with Ocean King . . . reveals that substantial
portions of Hilltop's Section A response contain material
misrepresentations with regard to Hilltop's corporate structure
and affiliations, Hilltop's entire Section A response, which
details its eligibility for a separate rate and was submitted in
lieu of a separate-rate application, is now fatally undermined
and unusable for any purposes.") (citation omitted).

[32] See Remand Results at 32 ("Based on the record as a whole, we
determine that Hilltop has failed to present any evidence or
argument that explains its failure to disclose its dealings with
Ocean King or its trading activity with persons/entities
involved in its Cambodian enterprise.").

[33] Docs. from AR6, Hilltop's AR6 7th Supp. Questionnaire Resp.
at 2 (admitting to Hilltop's affiliation with Ocean King for the
first time in response to Commerce's request to reconcile
Hilltop's prior representations with the public registration
documents for Ocean King).

[34] Docs. from AR6, Hilltop's AR6 Rebuttal Br. at 9.

evade Commerce's requests for information regarding possible additional undisclosed affiliates.[35]  Commerce inferred that Hilltop's failure to disclose its affiliation with Ocean King until faced with undeniable evidence thereof rendered its representations regarding lack of PRC control over its Chinese affiliates untrustworthy.  Remand Results at 15, 21.  As this Court has previously held, "the inference that a respondent's failure to disclose willful deception until faced with contradictory evidence implicates the reliability of that respondent's remaining representations is reasonable."  Changbao, __ CIT at __, 884 F. Supp. 2d at 1306 (citing Shanghai Taoen, 29 CIT at 199 n.13, 360 F. Supp. 2d at 1348 n.13).  Here the reasonableness of this inference is bolstered by evidence that Hilltop may also have additional undisclosed affiliates, whose roles in the production and pricing of subject merchandise Hilltop continues to deny.[36]

---

[35] See Remand Results at 21 (noting Hilltop's "potential affiliations with additional entities/persons") (citing Docs. from AR6, Hilltop 6th Supp. Questionnaire, A-570-893, ARP 10-11 (June 1, 2012), reproduced in Def.'s Resp. pub. app. at tab 17, at questions 5d, 5e, and 9a-c (requesting information regarding Hilltop's affiliation with certain entities/persons referenced in the record evidence) and noting that "Hilltop refused to respond to these questions" in its subsequent responses).

[36] See supra note 35.

Under these circumstances, Commerce reasonably
determined to disregard the totality of Hilltop's
representations in this review – including those previously used
to support Hilltop's separate rate status – as inherently
unreliable because Hilltop's conduct "raises questions regarding
what other information is missing that could be relevant to
[Commerce]'s proceeding." Remand Results at 23; see 19 U.S.C.
at §§ 1677e(a)(2), 1677m(d).  Hilltop's unexplained
contradictions in representing its corporate structure in this
review concern information that is core, not tangential, to
Commerce's analysis because it goes to the heart of Hilltop's
corporate ownership and control.[37]  And as Hilltop continued to
misrepresent its corporate structure – including by explicitly
denying any affiliation with Ocean King or other undisclosed
entities – until forced to reconcile its misrepresentations with
contradictory evidence,[38] Commerce reasonably decided that
Hilltop's remaining representations regarding its structure and
ownership – particularly those concerning the role of PRC

_____

[37] See Remand Results at 30 ("Hilltop's failure to disclose the
affiliation [with Ocean King] goes to the heart of its Section A
questionnaire response and the information that [Commerce]
relies on to make separate-rate status determinations.");
cf. Shanghai Taoen, 29 CIT at 199 n.13, 360 F. Supp. 2d
at 1348 n.13.

[38] See supra note 27.

government control in its pricing decisions – may be similarly

incomplete and inaccurate. See Remand Results at 15, 23.

Based on these findings, Commerce's conclusion that

Hilltop's representations regarding its corporate structure,

affiliations, and government control are not reliably accurate

and complete is reasonable.  Accordingly, because the record

contains no other reliable information to rebut the presumption

of government control,[39] Commerce's determination that Hilltop

failed to demonstrate eligibility for a separate rate from the

_____

[39] While Hilltop emphasizes the record evidence that it is
registered in Hong Kong, see Hilltop's Br. at 18-24 (relying on
Exs. A-5 (Hilltop's Hong Kong Business License) & A-6 (Hilltop's
Hong Kong Business Registration Form) to Hilltop's AR5 Sec. A
Resp.), Hilltop's registration in Hong Kong does not address the
potential for government control through Hilltop's disclosed and
possibly additional undisclosed PRC affiliates. Compare Certain
Coated Paper Suitable for High-Quality Print Graphics Using
Sheet-Fed Presses from the People's Republic of China, 75 Fed.
Reg. 24,892, 24,900 (Dep't Commerce May 6, 2010) (notice of
preliminary determination of sales at less than fair value and
postponement of final determination) (finding that a separate
rate analysis was not required for a respondent located entirely
in Hong Kong) (unchanged in the final determination, 75 Fed.
Reg. 59,217 (Dep't Commerce Sept. 27, 2010)), with Certain Woven
Electric Blankets from the People's Republic of China, 75 Fed.
Reg. 5567, 5570 (Dep't Commerce Feb. 3, 2010) (preliminary
determination of sales at less than fair value and postponement
of final determination) (determining that a full seven factor
separate rate analysis was necessary for a "collapsed entity
[that was] a joint venture between a PRC and a foreign (i.e.,
Hong Kong) company" because the PRC government could exercise
control through the PRC affiliate) (unchanged in the final
determination, 75 Fed. Reg. 38,459 (Dep't Commerce July 2, 2010)
and the amended final determination, 75 Fed. Reg. 46,911 (Dep't
Commerce Aug. 4, 2010)).

PRC-wide entity is supported by substantial evidence and is therefore sustained.

>    B.    The PRC-Wide Assessment Rate Applied in This Review Is
>          Remanded for Further Consideration and/or Additional
>          Explanation.

Next, Hilltop argues that the antidumping duty assessment rate applied to the PRC-wide entity, including Hilltop, was based on secondary information that was not properly corroborated in accordance with 19 U.S.C. § 1677e(c). Hilltop's Br. at 24-37.[40]  As explained below, remand is necessary for further consideration and/or explanation of the extent to which the PRC-wide rate applied in this review satisfies the corroboration requirement.

The rate applied to the PRC-wide entity in this review was calculated in the unfair pricing investigation that led to the issuance of this antidumping duty order, using information derived from the original petition to initiate these antidumping proceedings.[41]  In that proceeding, Commerce concluded that the

---

[40] See 19 U.S.C. § 1677e(c) ("When [Commerce] relies on secondary information rather than on information obtained in the course of an investigation or review, [Commerce] shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [Commerce's] disposal.").

[41] Preliminary Results, 76 Fed. Reg. at 8342 (unchanged in the Final Results, 76 Fed. Reg. at 51,942) (unchanged in the Remand Results at 24-25); see Certain Frozen and Canned Warmwater Shrimp from the People's Republic of China, 69 Fed. Reg. 70,997, 71,003 (Dep't Commerce Dec. 8, 2004) (notice of final
                                          (footnote continued)

"112.81 percent [PRC-wide rate] [was] corroborated within the
meaning of [19 U.S.C. § 1677e(c)]" because the agency had
"compared that margin to the margin [Commerce] found for the
largest exporting respondent" and "found that the margin of
112.81 percent ha[d] probative value."[42]   The PRC-wide entity was
then assigned this same rate in every subsequent administrative
review of this antidumping duty order, including the fifth
review at issue here, based on adverse inferences applied
because of the PRC's failure to respond to Commerce's
questionnaires and cooperate to the best of its ability.
See Preliminary Results, 76 Fed. Reg. at 8342 (discussing
history of the PRC-wide rate); cf. 19 U.S.C. § 1677e(b)(2)
(providing that adverse inferences "may include reliance on

---

determination of sales at less than fair value) ("Final LTFV
Determination") (assigning 112.81 percent as the PRC-wide rate).

[42] Certain Frozen and Canned Warmwater Shrimp from the People's
Republic of China, 69 Fed. Reg. 42,654, 42,662 (Dep't Commerce
July 16, 2004) (notice of preliminary determination of sales at
less than fair value, partial affirmative preliminary
determination of critical circumstances and postponement of
final determination) ("Preliminary LTFV Determination") (relying
on SAA at 870 ("Corroborate [within the meaning of 19 U.S.C.
§ 1677e(c)] means that [Commerce] will satisfy [itself] that the
secondary information to be used [(which includes information
derived from the petition)] has probative value.") and citing
Corroboration Memorandum, A-570-893, Investigation (July 2,
2004)) (unchanged in the final determination, 69 Fed. Reg. at
71,003).

information derived from . . . a final determination in the [underlying unfair pricing] investigation").

Commerce correctly posits that the PRC-wide rate need not be corroborated with respect to each particular respondent who, like Hilltop, is found to form a part of the PRC-wide entity and thus to be subject to the PRC-wide rate.[43] "Commerce's permissible determination that [a respondent] is part of the PRC-wide entity means that inquiring into [that respondent]'s separate sales behavior ceases to be meaningful."[44] But Commerce *is* required to corroborate the PRC-wide rate with respect to "its reliability and relevance to the countrywide entity as a whole." Peer Bearing, 32 CIT at 1313, 587 F. Supp. 2d at 1327.

To properly corroborate the PRC-wide rate, Commerce must determine that this rate "is relevant, and not outdated, or

---

[43] Remand Results at 38; cf. Peer Bearing Co. - Changshan v. United States, 32 CIT 1307, 1313, 587 F. Supp. 2d 1319, 1327 (2008) ("[T]here is no requirement that the PRC-wide entity rate based on AFA relate specifically to the individual company. . . . [This] rate must be corroborated according to its reliability and relevance to the countrywide entity as a whole.") (citation omitted); Shandong Mach. Imp. & Exp. Co. v. United States, No. 07-00355, 2009 WL 2017042, at *8 (CIT June 24, 2009) (explaining that Commerce has no obligation to corroborate the PRC-wide rate as to an individual party where that party has failed to qualify for a separate rate).

[44] Watanabe Grp. v. United States, No. 09-00520, 2010 WL 5371606, at *4 (CIT Dec. 22, 2010).

lacking a rational relationship to [the China-wide entity]."

Ferro Union, Inc. v. United States, 23 CIT 178, 205, 44 F. Supp.

2d 1310, 1335 (1999).  Here, Commerce determined that the 112.81

percent PRC-wide rate was "corroborated, relevant, and reliable"

because this rate "was fully corroborated during the

investigation." Remand Results at 38.[45]  During the

investigation, this rate was corroborated by comparison with the

rate determined for the largest exporting respondent,[46] which was

90.05 percent.[47]  But as Hilltop emphasizes, this comparison rate

was later changed; it was reduced to 5.07 percent following

---

[45] See also Preliminary Results, 76 Fed. Reg. at 8342 (assigning
to the PRC-wide entity in this review the 112.81 percent rate as
"the only rate ever determined for the PRC-wide entity in this
proceeding," without additional corroboration) (unchanged in the
Final Results, 76 Fed. Reg. at 51,942).

[46] Preliminary LTFV Determination, 69 Fed. Reg. at 42,662 ("To
corroborate the [PRC-wide] margin of 112.81 percent, we compared
that margin to the margin we found for the largest exporting
respondent.") (unchanged in the Final LTFV Determination, 69
Fed. Reg. at 71,003).

[47] See Preliminary LTFV Determination, 69 Fed. Reg. at 42,660
(explaining that Commerce had limited its examination to "the
four exporters and producers accounting for the largest volume
of subject merchandise" and listing "Allied" as the largest of
the four); id. at 42,671 (assigning a 90.05 percent weighted-
average dumping margin to "Allied") (adjusted to 84.93 percent
in the Final LTFV Determination, 69 Fed. Reg. at 71,003)
(adjusted to 80.19 percent in Certain Frozen Warmwater Shrimp
from the People's Republic of China, 70 Fed. Reg. 5149, 5151
(Dep't Commerce Feb. 1, 2005) (notice of amended final
determination of sales at less than fair value and antidumping
duty order)).

judicial review. Hilltop's Br. at 32-33 (relying on <u>Allied Pac.
Food (Dalian) Co. v. United States</u>, __ CIT __, 716 F. Supp. 2d
1339 (2010)).  Moreover, the rates for the remaining two
mandatory respondents from the investigation who received rates
above *de minimis* were also reduced following judicial review.
<u>Id.</u> (relying on <u>Allied Pac. Food (Dalian)</u>, __ CIT __,
716 F. Supp. 2d 1339; <u>Shantou Red Garden Foodstuff Co. v. United
States</u>, __ CIT __, 880 F. Supp. 2d 1332 (2012)).  Thus the
final liquidation rates for the four mandatory respondents from
the investigation were *de minimis*, 5.07 percent, 7.20 percent,
and 8.45 percent.[48]  These numbers are significantly different
from the (subsequently invalidated) 90.05 percent comparison
rate that Commerce used to corroborate the 112.81 rate assigned
to the PRC-wide entity in the investigation and in every segment
of this proceeding thereafter.

        As the comparison margin used to corroborate the PRC-
wide rate was subsequently shown not to reflect commercial

---

[48] <u>Final LTFV Determination</u>, 69 Fed. Reg. at 70,998 (listing
"Zhanjian Goulian; Yelin; Allied; and Red Garden" as the four
mandatory respondents in the investigation); <u>id.</u> at 71,003
(listing a *de minimis* rate for "Zhanjian Goulian"); <u>Allied Pac.
Food (Dalian)</u>, __ CIT at __, 716 F. Supp. 2d at 1342, 1352
(affirming reduction of the rate for "Allied" to 5.07 percent);
<u>id.</u> (affirming reduction of the rate for "Yelin" to
8.45 percent); <u>Shantou Red Garden Foodstuff</u>, __ CIT at __,
880 F. Supp. 2d at 1334-35 (affirming reduction of the rate for
"Red Garden" to 7.20 percent).

reality,[49] Commerce may no longer rely on that comparison to satisfy itself that the PRC-wide rate assigned in this review has probative value. Compare with Watanabe, 2010 WL 5371606, at *4 (holding that Commerce may rely on a countrywide rate that was corroborated in an earlier segment of an antidumping proceeding if the record contains "no evidence questioning the prior corroboration") (citations omitted).  Accordingly, Commerce has failed to establish that the 112.81 percent rate assigned to the PRC-wide entity (which includes Hilltop) in this review "is corroborated, relevant, and reliable." See Remand Results at 37-38.  Remand is therefore necessary on the issue of proper corroboration of the secondary information used to calculate the PRC-wide rate in this review.[50]  On remand, Commerce must either adequately corroborate the 112.81 percent rate and explain how its corroboration satisfies the requirements of 19 U.S.C. 1677e(c), or else calculate or choose a different countrywide rate that better reflects commercial

---

[49] See Allied Pac. Food (Dalian) Co. v. United States, 30 CIT 736, 435 F. Supp. 2d 1295 (2006) (remanding Commerce's calculation of Allied's rate during the investigation); Allied Pac. Food (Dalian), __ CIT at __, 716 F. Supp. 2d at 1342, 1352 (affirming reduction of the rate for Allied to 5.07 percent).

[50] See 19 U.S.C. § 1677e(c) (requiring corroboration of "secondary information"); SAA at 870 (defining "secondary information" to include "information derived from the petition that gave rise to the investigation or review").

reality, as supported by a reasonable reading of the record evidence.

**CONCLUSION**

For all of the foregoing reasons, Commerce's redetermination on remand is sustained except with regard to the antidumping duty assessment rate applied to the PRC-wide entity, which includes Hilltop.  On remand, Commerce must either adequately corroborate the 112.81 percent PRC-wide rate and explain how its corroboration satisfies the requirements of 19 U.S.C. 1677e(c), or calculate or choose a different countrywide rate that better reflects commercial reality, as supported by substantial evidence.  Commerce shall have until September 9, 2013 to complete and file its remand determination. Plaintiff and Defendant-Intervenors shall have until September 23, 2013 to file comments.  Plaintiff, Defendant, and Defendant-Intervenors shall have until October 9, 2013 to file any reply.

It is SO ORDERED.

                                        /s/ Donald C. Pogue
                                       Donald C. Pogue, Chief Judge

Dated: July 23, 2013
       New York, NY